[No. 1295. Decided January 31, 1895.]

## EUGENE S. SUTTON, *Respondent*, v. THE CITY OF SNOHOMISH, *Appellant*.

MUNICIPAL CORPORATIONS — LIABILITY FOR EXCAVATIONS IN SIDEWALK — INSUFFICIENCY OF SAFEGUARD — CONTRIBUTORY NEGLIGENCE — EXCESSIVE DAMAGES — IRREGULARITY IN TAKING TESTIMONY — OPINION EVIDENCE.

The question of the liability of a city for injuries sustained by an individual by reason of a defective street is a question of law which should be raised by demurrer and not by motion for a non-suit.

The duty of a city to keep streets in repair is not a governmental but a ministerial duty, and for a breach thereof an action will lie in favor of a person injured as a result of such negligence.

Where a city has exclusive control and management of its streets, with power to raise money for their construction and repair, a duty arises to the public from the character of the powers granted to keep its streets in a reasonably safe condition for use in the ordinary modes of travel, and the city is liable to respond in damages to those injured by a neglect to perform such duty.

A presentation to the city council, prior to suit, of a claim for damages for injuries resulting from the breach of a municipal duty, is not within the purview of Gen. Stat., § 638, which provides that all demands against a city shall be presented to and audited by the city council.

A city is chargeable with notice of a dangerous excavation in a street, although actual notice may not have been brought home to it, when the excavation had been authorized by a permit of the city council and had existed for a period of two months.

Whether want of notice of the removal of a guard around an excavation in a street would exempt a city from liability, depends upon whether or not a sufficient protection was provided in the first instance to guard travelers thereon against accident, and the question of the sufficiency of the protection is one for the jury.

The fact that a traveler upon a highway with some knowledge of an excavation therein, upon coming on a dark night to a guard placed partially over the excavation, attempts to step around to one side, and falls into the excavation at a point left unprotected and unlighted, is not conclusive evidence of contributory negligence on his part, and under such circumstances the question of negligence is properly submissible to the jury.

The taking of the testimony of a plaintiff, who is unable to attend court at the time of trial, at his residence, in the presence of judge, jury and counsel for the respective parties, while irregular, is not prejudicial error.

The opinion of a witness that plaintiff was badly hurt by falling into an excavation negligently left unguarded by defendant is admissible in evidence, especially when the effect of the accident was fully shown by other evidence, which was unobjected to.

A verdict for $13,625 is not excessive for injuries received through the negligence of defendant when it appears that plaintiff was a healthy man prior to the injury; that as a result of the accident he received a scalp wound, an injury to the small of the back, and probably a resultant injury to the kidneys; that the lower extremities are partially paralyzed, and that he cannot walk without crutches; that he suffers much pain, sleeps but little, and will never be able to do work as a turner and millwright, or any other kind of labor, and will probably not live longer than a year.

*Appeal from Superior Court, Snohomish County.*

*L. H. Coon* (*Coleman & Hart*, of counsel), for appellant.

*Andrews & Morris*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—Avenue B is a street running north and south in the city of Snohomish (a municipal corporation of the third class), and is intersected at right angles by First street, which is the principal thoroughfare of the city. About seven o'clock in the evening of December 10, 1892, the respondent, while walking north on the sidewalk on the east side of the avenue, fell into an excavation, whereby he sustained serious personal injuries. This excavation was on the west side of a brick building fronting on First street and extending north on the east line of avenue B, and extended about three feet into the sidewalk for a distance of thirty-five feet north and south. The respondent, claiming that the city negligently left this excavation open and un-

guarded and without light or signal to indicate danger, brought this action to recover damages for the injuries so sustained. The city answered, and admitted that it was a municipal corporation, and that avenue B was one of its streets.

It denied all other allegations of the complaint, and, as an affirmative defense, averred that at the place where the excavation was made Wells & Davis, contractors, were erecting a two-story brick building for J. Otten, the owner of the abutting property, and if any excavation was made in said street it was made by said contractors, their servants or employes, without the consent or knowledge of the city, and that the defendant had no notice that any such excavation was made, or left unguarded; and that if the plaintiff sustained any injury it was caused solely by his own negligence, and not by the negligence of the defendant. A verdict for $13,625 was returned by the jury against the city, and a judgment was subsequently entered in accordance therewith. At the close of the plaintiff's evidence the defendant moved for a non-suit, on the ground that the plaintiff had not made a sufficient case for the jury. The motion was denied and the defendant excepted, and this ruling of the court is assigned as error.

It is urged on behalf of the appellant that the motion for non-suit should have been granted for the following reasons:

"1. Non-liability of the defendant.

"2. Failure of the plaintiff to present his claim and demand payment thereof before beginning this action.

"3. It does not appear that the defendant had notice of the defect in the highway complained of.

"4. That it appears from plaintiff's case that he was guilty of contributory negligence."

As to the liability of the city of Snohomish for in-

juries sustained by individuals by reason of defective streets, it may not be improper here to observe that the question is not properly raised by the motion for a non-suit. It is a pure question of law, and such questions are properly raised by demurrer. But, inasmuch as no objection is made to its consideration upon the motion, we will consider it as presented and discussed in the able briefs of counsel.

It is urged by counsel for the appellant that the damages claimed in this action are for neglect of governmental duty, and for that reason, as well as for the further reason that there is no express statute in this state making cities of the third class liable for damages resulting from failure to keep their streets in repair, this action cannot be maintained. It must be conceded that there is no legislative enactment declaring these cities liable for such negligence as is alleged in the complaint in this action; and it may also be conceded that the appellant city cannot legally be made to respond in damages for negligence in the discharge of purely governmental duties. But it does not necessarily follow from these propositions that the city is exempt from liability in the present case.

In the first place, we are of the opinion that the laying out, repairing and controlling of streets by a chartered municipal corporation does not call forth the exercise of strictly governmental functions. In the performance of such duties, however imposed, the municipality acts primarily for the benefit of the inhabitants of the particular locality. In preserving the peace, caring for the poor, preventing the destruction of property by fire, and preserving the public health, it assumes duties which are said to be in their nature solely governmental (Jones on Negligence of Municipal Corporations, ch. IV), and for the non-

exercise, or negligent exercise, of which the corporation is not generally liable to individual citizens. But the duty to keep streets in repair is a municipal or ministerial duty, for a breach of which an action will lie in favor of a party injured thereby. *Denver v. Dunsmore,* 7 Colo. 328 (3 Pac. 705).

In the second place, we think that where, as here, a city has exclusive control and management of its streets, with power to raise money for their construction and repair, a duty (when not expressly imposed by charter) arises to the public from the character of the powers granted to keep its streets in a reasonably safe condition for use in the ordinary modes of travel, and that it is liable to respond in damages to those injured by a neglect to perform such duty. There is undoubtedly a want of harmony among the decisions of the courts upon this question, but we believe the decided weight of authority, as well as sound reason, is in favor of the view above expressed. *Denver v. Dunsmore, supra;* Shearman & Redfield, Negligence (4th ed.), § 289; 2 Dillon, Mun. Corp. (4th ed.), § 1017; Elliott, Roads and Streets, p. 446; Jones, Neg. Mun. Corp. 88, *et seq.;* Cooley, Torts (2d ed.), 746; *Weightman v. Washington,* 1 Black, 39; *Barnes v. District of Columbia,* 91 U. S. 540; *District of Columbia v. Woodbury,* 136 U. S. 450 (10 Sup. Ct. 990).

But this question is not a new one in this state. It was before the territorial supreme court in *Hutchinson v. Olympia,* 2 Wash. T. 314 (5 Pac. 606), and was there decided adversely to the contention of the appellant, and was referred to approvingly in *Morgan v. Morley,* 1 Wash. 464 (25 Pac. 333).

The statute provides (Gen. Stat., § 638) that —

" All demands against such city shall be presented to and audited by the city council, in accordance with

such regulations as they may by ordinance prescribe; and upon the allowance of any such demand, the mayor shall draw a warrant upon the treasurer for the same, which warrant shall be countersigned by the clerk, and shall specify for what purpose the same is drawn, and out of what fund it is to be paid."

A presentation of the claim sued upon to the city council was not alleged or proved in this instance, but we think it was not such a demand as was contemplated by the legislature in enacting the section of the statute above quoted. The demands there spoken of are those arising out of the ordinary transactions of the city, and which may be examined and compared with the vouchers and "audited," and not those resulting from violations of municipal duties. This construction has virtually been given to statutes even more mandatory in terms than ours by the highest courts of several of the states. See *Kelley v. Madison*, 43 Wis. 638 (28 Am. Rep. 576); *Bradley v. Eau Claire*, 56 Wis. 168 (14 N. W. 10); *Jung v. Stevens Point*, 74 Wis. 547 (43 N. W. 513); *Lay v. Adrian*, 75 Mich. 438 (42 N. W. 959); *Warren v. Davis*, 43 Ohio St. 447 (3 N. E. 401); *Sheridan v. Salem*, 14 Ore. 328 (12 Pac. 925); *Pomfrey v. Saratoga Springs*, 104 N. Y. 459 (11 N. E. 43).

We readily agree with the learned counsel for the appellant in the assertion that the city cannot be held guilty of negligence if it had no notice of the existence of the excavation in question. But we are unable to say that no notice had been shown by the plaintiff when he closed his case. It is not necessary in such cases that actual notice be shown. Constructive notice is sufficient. If this dangerous hole, which, according to the statement in appellant's brief, was but eleven feet and five inches from the north line of First street, was in existence for such a length of time that the city

authorities, by the exercise of ordinary vigilance, would have discovered it in time to prevent the accident, the city cannot escape liability for want of notice. Under such circumstances the law imputes notice. Failure to discover and remedy a dangerous defect in a public street, within a reasonable time, is itself negligence. There was evidence tending to prove that this excavation was made some two months before the respondent fell into it, and that the mayor of the city and at least one of the members of the council were very frequently in close proximity to it before the accident occurred. Whether the street commissioner ever saw it or not is not disclosed by the evidence, but if he did not he was certainly remiss in the discharge of his official duty. We think the court committed no error in refusing to withdraw the question of notice from the consideration of the jury. Moreover, it conclusively appears from the evidence adduced by the defendant that the city council gave permission to Mr. Otten to remove the sidewalks on First street and avenue B, and to make this excavation for a basement of a building which he was about to erect. This permit must have been given as early as July, 1892, for it appears that the contract for excavating the basement was let during that month. The fact that a permit was granted was notice to the authorities that the work was in progress, and they were then charged with the duty of seeing that it was properly conducted. *District of Columbia v. Woodbury, supra; Cleveland v. St. Paul,* 18 Minn. 279. See, also, *Prentiss v. Boston,* 112 Mass. 43; Deering, Negligence, § 174.

And it was incumbent upon them to see that the excavation was so guarded as to protect travelers upon the street from being injured by it. That such was the duty of the city is not disputed, but it is earnestly

insisted that the evidence fails to establish negligence in that regard for the reason that it is shown that the excavation was always guarded against accidents, and that the barrier which was usually kept across the sidewalk in front of it was not removed by any of the city authorities, or with their knowledge or consent, and was in its usual place as late as three o'clock in the afternoon of the day on which the respondent was injured. The argument is that so short a time elapsed between the removal of the safeguard and the happening of the accident that constructive notice of the dangerous condition of the sidewalk at the time of the accident cannot be imputed to the city. But whether want of notice or knowledge of the removal would exempt the city from liability, under the circumstances of this case, depends entirely upon whether or not in the first instance a sufficient protection was provided to guard travelers upon the sidewalk against accident. It is not pretended that the city itself ever put up any railing or other safeguard around this excavation, and for aught that appears in the record, it never even required the person at whose instance it was dug to do so. It appears, however, that the owner of the adjoining property, or those who erected the building thereon, did place a loose plank or joist across the sidewalk at or near the south end of the excavation. The end of this plank next to the building and excavation rested upon a lime barrel, and the other end was supported by a board which was fastened to a post near the outer edge of the walk. If that was an adequate protection, under the then existing circumstances, the city is not liable for any injuries resulting from its removal by some unauthorized person and occurring before it could, by the exercise of reasonable diligence, discover its displacement. But

whether this board, which was without any permanent or substantial fastening whatever and was liable to be thrown down at any moment by the mere carelessness or thoughtlessness of persons passing along the sidewalk, was, at any time, a sufficient protection to the public, was a question for the jury to decide. And they decided that it was not, and we think their conclusion was amply justified by the facts before them. See *Jackson v. Schmidt,* 14 La. An. 806, and *District of Columbia v. Woodbury, supra.*

Neither do we think that the court erred in submitting the question of contributory negligence on the part of the plaintiff to the jury. The evidence discloses that, at the time of the accident, there were a couple of boards extending from the side of the building, at a point near the middle of the excavation, diagonally across the sidewalk in a southwesterly direction, constituting what the witnesses denominated a "sheer guard." These boards were nailed to a post at their southwestern extremity, but it does not exactly appear how they were supported at the end next to the building. They were about two and one-half feet above the sidewalk. This "sheer" left about one-half of the length of the excavation entirely unprotected. The respondent, as he says, did not see it until he almost got against it, as it was then quite dark. When he discovered it he stepped around to the right and fell into the excavation, which he did not see, and of which he had no knowledge. He knew that a large excavation was dug for the purpose of a basement, and had several times seen the building while in course of construction; but that was the extent of his knowledge of the situation. Whether there was sufficient light upon the street to have enabled him to see where he

was going, was a controverted question, but it is conceded that the area way itself was not lighted at all.

The appellant claims that the fact that the respondent did not retrace his steps and leave the sidewalk when he saw the fence before him, is conclusive evidence of negligence on his part. But we do not think so. Whether an ordinarily prudent and cautious man would, under similar circumstances, have turned to the right or to the left, was a question for the jury, and not the court, to determine.

The respondent was not able to go to the court house at the time of the trial, and his testimony was taken at his residence in the presence of the judge, jury and counsel for the respective parties; and the appellant now claims that the proceeding was contrary to law, and that the judgment ought to be reversed on account thereof. The proceeding was no doubt irregular, but it does not appear that it was objected to at the time, nor can we see that the appellant was in anywise injured or prejudiced thereby. Error without injury is not a sufficient ground of reversal.

It is objected that the court committed error in giving certain instructions to the jury, and also in refusing to give certain instructions requested by appellant. The instructions given are voluminous, and a careful examination of them satisfies us that the law governing the case was fairly presented to the jury. Taken together, they are as favorable to the appellant as the facts and the law would warrant.

The appellant also claims that the court erred in permitting a witness to give his opinion as to whether the respondent was badly hurt by his fall, but we think the objection is untenable. And, besides, the effect of the accident upon the respondent was fully shown by other evidence, to which no objection was interposed.

In our opinion, appellant was not prejudiced by any ruling of the court in admitting or excluding testimony.

Lastly, it is contended that the verdict ($13,625) is excessive, and, for that reason, should be set aside and a new trial ordered. The code (Code Proc., § 400) provides that a new trial may be granted for excessive damages, appearing to have been given under the influence of passion or prejudice. But, in this instance, we perceive nothing indicating in the slightest degree that the jury were influenced by any improper motive whatever, in assessing plaintiff's damages. Nor are we able to say that the damages awarded are more than a just compensation for the injuries sustained by the respondent. That those injuries were of a very serious character will appear from the following clear and concise statement contained in the brief of counsel for the appellant: "He received a scalp wound, and an injury to the small of the back, and probably a resultant injury to the kidneys. The lower extremities are partially paralyzed, and it is only by the use of crutches he is able to walk about the house. He suffers much pain, sleeps but little, and will never be able to do work as a turner and millwright, or any other kind of labor, and will probably not live longer than a year. Prior to this injury he was a healthy man." In view of these facts, we are not disposed to disturb the verdict on the ground of excessive damages.

We find no substantial error in the record, and the judgment is therefore affirmed.

DUNBAR and SCOTT, JJ., concur.

HOYT, C. J., dissents.