CASE 101—ACTION BY LEO KEHER AGAINST CITY OF LOUISVILLE FOR DAMAGES FOR PERSONAL INJURIES.—MARCH 11.

## City of Louisville v. Keher.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION, NO. 1.

JUDGMENT FOR PLAINTIFF AND CITY APPEALS.   AFFIRMED.

MUNICIPAL   CORPORATIONS—PERSONAL   INJURIES—OBSTRUCTION   IN STREET—KNOWLEDGE OF CITY—ESTOPPEL—INSTRUCTIONS—VERDICT —TRIAL—ABSENCE OF CITY ATTORNEY—NEW TRIAL.

Held:   1. In an action against a city for personal injuries resulting to plaintiff from striking a dangerous obstruction in a street while riding a tandem bicycle at night with a lady in front of him, it appeared that the obstruction was part of building material deposited at that point pursuant to a building per-

mit issued to the owners granting them the right to deposit material on not more than one-third of the width of the street; that the obstruction extended more than one-third of the way across the street, and had thus existed for several weeks, with a knowledge of the officers of the city whose duty it was to report such matters. The evidence for plaintiff showed that there was no light displayed warning travelers of the obstruction, and that the bicycle struck an obstruction outside the limit allowed by the building permit. HELD, that the failure of the court to submit to the jury in its instructions the questions whether the city had notice of the obstruction, and whether the city at the time and place of the accident kept its street in a reasonably safe condition for persons riding thereon with ordinary care for their own safety, is not cause for reversal.

2. In civil cases the circuit court is not required to give the whole law of the case to the jury in its instructions, but it is incumbent on litigants to ask such instructions as they deem proper.

3. Where a dangerous obstruction has existed in a street for several weeks with the knowledge of the officers of the city whose duty it is to report such matters, the city is estopped, in an action for personal injuries resulting therefrom, to claim that it had no notice of the obstruction.

4. Where a city has knowledge of a dangerous obstruction in a street, it is bound to exercise ordinary care for the protection of the traveling public in giving warning of the danger.

5. A city is liable to a person injured while riding a tandem bicycle at night, with a lady in front of him, by striking dangerous obstructions in the street, where he had no knowledge of them, and could not, by ordinary care, have discovered them in time to have avoided the injury.

6. A person traveling on a street in a city has the right to assume, in the absence of anything indicating the contrary, that the street is safe, or reasonably so.

7. A city can not go on with a trial of an action for personal injuries without objection in the absence of its city attorney, who was familiar with the facts, and then, when defeated, procure a new trial on the ground that he was not present.

8. Where the evidence in an action against a city for personal injuries showed that plaintiff was a young man and a medical student at the time of the accident; that one eye was entirely destroyed by the accident, and the other was so affected independently of the accident, that he could not read with it; that he suffered for months most intensely from the injuries, and

City of Louisville v. Keher.

that his intended career in life was destroyed—a verdict for $7,500 is not excessive.

H. L. STONE, CITY ATTORNEY, FOR APPELLANT.

The errors complained of in this action are:

1. The court erred in forcing appellant, city, into a trial in the absence of the city attorney who was absent on business for the city, and who was familiar with the case, while the assistant city attorney who was present had no familiarity with the case, and was not prepared to try it.

2. The court erred in the instructions given to the jury.

3. The damages awarded are excessive and appear to have been given by the jury under the influence of passion or prejudice.

### AUTHORITIES CITED.

City of Covington v. Emma Asman, 68 S. W., 646; City of Henderson v. Reed, 62 S. W., 1039; City of Covington v. Manwaring, 68 S. W., 625; City of Wickliffe v. Moring, 68 S. W., 641, 4th compilation of Ordinances City of Louisville, 107-120.

KOHN, BAIRD & SPINDLE, O'NEAL & O'NEAL, AND R. L. GREENE, ATTORNEYS FOR APPELLEE.

1. A city is liable for the acts of its licensee.

Whatever is done by its license or authorization is the same as though the city itself did the act, and any negligence in the doing of any authorized or licensed act, or the omission of any duty charged by such license or authorization, is the negligence or omission of the city.   District of Columbia v. Woodbury, 136 U. S., 450; Boncher v. City New Haven, 40 Conn., 456; Sutton v. Snohomish, 11 Wash., 28 (39 Pac., 275, 48 Am. St. Rep., 852); Anderson v. City of Wilmington, 19 Atl., 509; Stevens v. City of Macon, 83 Mo., 345; McCallister v. City of Albany, 18 Ore., 426; Baumeister v. Markham, 101 Ky., 122; Pettengill v. City of Yonkers, 116 N. Y., 558; Nelson v. Counter, 100 N. Y., 89; Turner v. City of Newburg, 109 N. Y., 301; Jennings v. Van Schaick, 108 N. Y., 530; Cleveland v. St. Paul, 18 Minn., 279; Prentiss v. Boston, 112 Mass., 43; City of Baltimore v. O'Donnell, 33 Md., 110; Grant v. Brooklyn, 41 Barb., 381; City of Seneca v. Jalinsky, 15 N. Y. Sup. Ct. Rep., 571; City of Indianapolis v. Dougherty, 71 Ind., 5; Bacon v. City of Boston, 3 Cush, 174; Wendell v. City of Troy, 39 Barb., 329; Storrs v. Utica, 17 N. Y., 104; City of Glasgow v. Gillenwaters, 23 R., 2375 (67 S. W., 361); Fugate v. City of Somerset, 29 S. W., 970; City Covington v. Bryant, 7 Bush,

340; City of Louisville v. Brewer, 24 R., 1674; Dillon on Mun. Corp., sec. 1027; May v. City of Anaconda, 66 Pac., 759; Deering on Negligence, sec. 163, City of Covington v. Asman, 24 R., 415; Jones on Neg. of Mun. Corp., secs. 79, 86, 183, 184; Elliott on Roads & Streets, secs. 611, 613, 614, 824.

2. Contributory negligence. City of Glasgow v. Gillenwaters, 23 R., 2375; (67 S. W., 381); City of Davenport v. Ruckman, 37 N. Y., 568; Pettengill v. City of Yonkers, 116 N. Y., 564; Jennings v. VanSchaick, 108 N. Y., 531; Burt v. Legg, 110 Ind., 479; Turner v. Newburg, 109 N. Y., 301 (4 Am. St. Rep., 453); Garden v. Richmond, 83 Va., 436; City of Dubuque v. Burwick, 173 Ill., 553; Topeka Water Co. v. Whiting, 58 Kan., 639.

3. The street was unsafe. Dillon on Mun. Corp., 1008; Turner v. King, 17 R., 872; Railroad v. Mangham, 69 S. W., 80; Lithgow Mfg. Co. v. Samuel, 24 R., 1590.

4. Doctrine of notice was submitted under general instructions of negligence.

5. Absence of counsel. Cook v. Commonwealth, 24 R., 1410; Douglass v. Douglass, 24 R., 2398.

6. Excessive verdict. Constitution, sec. 54; Van Hell v. Great Northern Railroad, 96 N. W., 789; City of Louisville v. Bailey, 25 R., 6.

7. Courts do not busy themselves with harmless errors. Economy Light & Power Co. v. Hiller, 68 N. E., 72; Lithgow Mfg. Co. v. Small, 24 R., 1590; L. & N. R. R. Co. v. Rogers, 24 R., 1160.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Between 9 and 10 o'clock on the night of July 11, 1899, appellee, Keher, was riding on a tandem bicycle with a young lady (the lady being in front) along Jackson street, near Green, in Louisville, Ky. They were riding a little to the east of the middle of the street. The place was dark from the shade trees obstructing the electric light. The front wheel of the bicycle struck a rock, 8 by 14 by 20 inches. The wheel was crushed, and both riders were thrown down. The stone was at the edge of a mortar bed. The young lady was thrown over in the mortar bed, and the appellee, who was on the rear seat, was thrown into a pile of rock, fractur-

ing the ·arch over his right eye, severely cutting the scalp, and injuring his eardrum. By reason of an internal hemorrhage, the optic nerve of his right eye was destroyed; his ear inflamed, and gave him great pain. The right arm was also affected, but gradually this got right, and the hearing in the ear was not permanently impaired, but the right eye is entirely blind. The left eye also became inflamed, and is much impaired, although this appears from the evidence to be due to another cause. The plaintiff was studying medicine, but, as his sight got so that he could not read, he had to give that up. His sufferings from the injury to his ear and the atrophy of the optic nerve were very great. He filed this suit against the city and others to recover for his injuries. The jury found a verdict against the city for $7,500, on which the court entered judgment, and the city appeals.

On February 23, 1899, the city issued a permit to St. Boniface Church to build a one-story brick and stone church on Green street, near Jackson, and on May 12, 1899, it issued a permit for the building of a three-story brick monastery on the northeast corner of Jackson and Green. By an ordinance of the city regulating the use of public ways it is provided, in substance, that for the purpose of erecting houses or. other improvements adjacent to any street the person making the erection may use not more "than one-third of the width of said street fronting said improvement for material for making and conducting said improvements," all such obstructions to "be safely guarded in such manner and with sufficient necessary red lights at night as to protect all those traveling or passing upon such street." (See Compilation of Ordinances 1901, 320, 321.) In erecting the buildings referred to, the contractors had placed in Jackson street a pile of bricks and rock; also a mortar bed, which ex-

tended out nearly to the center of the street; and had placed around the mortar bed foundation stones of the dimensions above given to protect it from the wagons passing along the street. The proof for the plaintiff by a number of witnesses was that there were no lights of any sort on the obstruction, or about it; that it had existed in the street for several weeks, with the knowledge of the officers of the city; and that for two or three nights, at least, before the plaintiff was hurt, it was lighted in no way. It was a public and much-used street of the city, paved with granite. The plaintiff was ignorant of the obstruction, and unable to see it from the want of light. He was riding along about four or five miles an hour, when his wheel struck the stone. The proof for the city tended to show that the boys in the neighborhood had given trouble about the lanterns; that a few nights before, one of its officers had gotten a lantern, and put it on the obstruction; and that on the night in question the lights were in position and burning. On the question of light, however, the great weight of evidence was with the plaintiff. As to who placed the obstruction in the street and left it unlighted the evidence is very unsatisfactory. There were separate contractors for the stonework, the brickwork, the plastering, and the putting in of the furnace and engine. Each of these denied that the mortar bed was his, or each tried to put the blame on somebody else. The contractor for the furnace and engine was not sued. The action was dismissed as to the contractors for the stonework and the plastering. The jury found in favor of Hoertz, the contractor for the brickwork. This threw the entire liability on the city.

The court, of its own motion, instructed the jury as follows: "(1) The court instructs the jury that it is the

duty of the defendant the city of Louisville to keep its streets
and highways in a reasonably safe condition for use by the
public, and, if it is necessary that a part of the street be used
as a place of deposit for material for the erection of a build-
ing adjacent to the said street, it is the duty of the person
using the street as a place of deposit for such material to
protect persons using the said street at night from in-
jury by giving notice or warning of the obstruction
to the street by placing sufficient lights upon or near the said
material to give timely warning to other persons using the
said street; and it is the duty of the defendant the city of
Louisville to exercise ordinary care in causing the said warn-
ing to be given by persons to whom it may have given a
license to use a portion of a public street as a place of de-
posit for such material. And if the jury shall believe from the
evidence that the defendant Fred Hoertz placed the material
in Jackson street with which the plaintiff came in contract,
and which caused his injury, and the presence of said material
in the street was not indicated by sufficient lights to give
reasonable and timely warning to persons using the street
as the plaintiff was then using it, and by reason thereof he
was caused the injuries of which he complains, and he did
not, by negligence upon his part, help to cause, or bring
about his injury, but for which contributory negligence, if
any there was, he would not have been injured, then the
law is for the plaintiff as against the defendant Hoertz, and
they should so find. (2) If the jury find that the defendant
Hoertz' or his employes placed the said obstruction in the
street, and failed to give warning of its presence, as men-
tioned in instruction No. 1, and they find for the plaintiff,
and they shall believe from the evidence that the defendant
the city of Louisville did not exercise ordinary care to have

the said notice or warning given of the obstruction to the said street, then the law is for the plaintiff against the city as well as against the said Hoertz. (3) But unless the defendant Hoertz, or some of his agents or employes, placed the said obstruction in the street, and failed to give notice of its presence as mentioned in instruction No. 1, the law is for the defendant Hoertz, and the jury should so find. Or, if the plaintiff was negligent, and thereby helped to cause or bring about his injuries, and he would not have been injured but for his contributory negligence, if any there was, the law is for the defendants. (4) If the jury shall find from the evidence that the defendant Hoertz did not place the obstruction in the street, but they shall believe from the evidence that it was placed there by some other person, and the defendant the city did not use ordinary care to give notice of the said obstruction, as mentioned in instruction No. 1, the law is for the plaintiff as against the city, and they should so find."

Over the objection of the city, the court gave the two following instructions asked by the plaintiff: "(5) If the jury find their verdict for the plaintiff, they shall award him against both of the defendants, or against the city of Louisville alone, such a sum of money as they believe from the evidence will fairly and reasonably compensate the plaintiff for the pain and suffering, mental and physical, sustained by him, directly resulting from the injuries complained of, and also for the permanent impairment of his power to earn money in the loss of his right eye, not exceeding the sum of $10,000, the amount claimed in the petition. If they find a verdict for the defendants, they shall say so, and no more. (6) By 'negligence' is meant in these instructions the failure to observe ordinary care. By 'ordinary care' is meant a

failure to observe such care and prudence as persons of ordinary care usually exercise under the same or similar circumstances.  By 'contributory negligence' is meant the failure on the part of the plaintiff to use ordinary care for his own safety, and by reason of which he helped to cause or bring about the injuries complained of, and, but for such contributory negligence, if any there was, he would not have been injured.  But the plaintiff could not be guilty of contributory negligence at the time and place complained of unless, by the exercise of ordinary care on his part, he could have seen the obstructions or materials in connection with which he was injured, before striking the same, in time to have avoided the injuries complained of.  Unless the plaintiff knew the obstructions were in the street, or unless they were marked by some light as hereinbefore defined, the plaintiff, in traveling the street, was compelled to use only such care as persons of ordinary care would use, presuming the street to be safe under the same or similar circumstances."

It is insisted for the city that the two first instructions, taken together, make the right of the appellee to recover a verdict against the city turn solely on the fact that the city did not exercise ordinary care to have warning given of the obstruction of the street, and that the jury should have been told that the city was liable only if the city knew of the obstruction, or by ordinary care should have known of it, and also knew that at the time and place of the accident the obstruction was not sufficiently lighted, or by the exercise of ordinary care should have known this.  It is also complained that the court did not submit to the jury the question whether the city, at the time and place of the accident, kept its street in a reasonably safe condition for persons riding thereon with ordinary care for their own safety.  In support of the

instructions of the court we are referred to the cases of District of Columbia v. Woodbury 136 U. S., 450, 10 Sup. Ct., 990, 34 L. Ed., 472; Boucher v. City of New Haven, 40 Conn., 456; Sutton v. Snohomish, 11 Wash., 28, 39 Pac., 273, 48 Am. St. Rep., 847; Anderson v. City of Wilmington (Del. Super.), 19 Atl., 509; Stephens v. City of Macon, 83 Mo., 345; McAllister v. City of Albany, 18 Or.,426, 23 Pac., 845—all of which are much alike, and hold that, where a city authorizes an excavation to be made in one of its streets, and a traveler on the street is injured by the negligence of the person making the excavation in not sufficiently covering the hole, or not giving sufficient warning of the danger, the city is liable to the person injured by reason of the act which it has licensed without notice to it of the dangerous condition of the excavation. The rule on which these opinions rest is that the city, having exclusive control over its streets, and being charged with the duty of maintaining them, must keep its streets in a reasonably safe condition for public travel, and for a failure to do this is primarily liable, although the defect in the highway may be due to the act of some contractor or third person done by authority of the city. Glasgow v. Gillenwaters (113 Ky., 140, 23 R., 2375), 67 S. W., 381; 2 Smith on Municipal Corporations, sections 1289, 1290; 2 Dillon on Municipal Corporations (4th Ed.), section 1027.

The city asked no instructions on the trial. The permit for the erection of the building was, under the ordinance, permission for the contractors to use one-third of the width of the street fronting the improvement for material for making and conducting the improvement, and, while the ordinance required the contractor or person so using the street to guard the obstruction in such manner and with such light

at night as to protect all those traveling upon the street, the primary duty of the city to the public to keep its street reasonably safe rested on it. But the obstruction in the case before us extended out nearly to the middle of the street, and the plaintiff was injured, according to the uncontradicted testimony, 13 or 14 feet from the curb, which placed him beyond the point to which the obstruction should have extended under the ordinance. Yet the obstruction had thus existed in the street, according to the uncontradicted testimony, with the knowledge of the officers of the city, for several weeks, and under the evidence the city was at least not prejudiced by the failure of the court to submit to the jury the question whether the city had notice of the obstruction. It was a much traveled highway, paved with granite; and for the city to permit such an obvious obstruction to remain for the length of time shown by the evidence in such a street, when its officers whose duty it was to report on such matters knew all about it, can not but evidence acquiescence on the part of the city in this use of the highway by the contractors. 2 Smith on Municipal Corporations, sections 1298-1300. Instructions 1 and 2 aptly informed the jury that Hoertz was liable if he placed the obstruction in the street, and failed to indicate it by sufficient light to give reasonable warning to persons using the street. By them the jury were also properly told that it was the duty of the city to keep its streets in a reasonably safe condition for use by the public, and that it was its duty to exercise ordinary care in causing warning to be given by persons licensed by it to use a portion of the public street as a place of deposit for building material, and that it was liable as well as Hoertz if it failed to exercise such care. The jury were properly told that Hoertz was not liable unless he or his agents

placed the obstruction in the street, and that, if it was placed there by some other person, and the city did not use ordinary care to give notice of it, the city alone was liable.

While the form of instruction 5, if taken alone, would be objectionable, the meaning, when it is read in connection with 3 and 4, is perfectly plain. The instruction begins with the words, "If the jury find their verdict for the plaintiff." Hoertz and the city were the only defendants to the action at the time the instruction was given. If the jury did not find against Hoertz, they could not find for the plaintiff unless they found against the city. The instruction was not, therefor, an intimation from the court that the jury should find against the city. It only gave the measure of damages in case "the jury find their verdict for the plaintiff." The obstruction of the street, as the uncontradicted testimony showed it to be, manifestly made the street not reasonably safe for the traveling public, and no good could have come to the city from the giving of an instruction on this point which neither party asked on the trial. The rule is that only errors prejudicial to the substantial rights of the party complaining are grounds for reversal. In civil cases the circuit court is not required to give the whole law of the case to the jury in his instructions, but it is incumbent on the litigants to ask such instructions as they deem proper. No good would come from giving to the jury instructions on every conceivable question not desired by either party on the trial because deemed of no value before the jury under the evidence. The court, after laying down in instruction No. 1 correctly the rule that it was the duty of the city to keep its streets reasonably safe for the use of the public, undertook in No. 4 to bring the mind of the jury directly to the question of fact whether ordinary care had been exercised by the city to give

notice of the obstruction; all the evidence introduced by it on the trial being on this question, and there being no conflict of evidence as to the nature of the obstruction. The instruction could not have been prejudicial unless, as maintained for appellant, the city was not liable without notice to it that the obstruction was not lighted. To so hold would be to relieve the city entirely of its primary duty to keep its streets in a reasonably safe condition. It had authorized or acquiesced in the obstruction of the street, and therefore had notice of the obstruction. Knowing the obstruction, it was bound to exercise ordinary care for the protection of the traveling public in giving warning of the danger. It was not liable if, notwithstanding this, an accident happened; but the instructions of the court only required of it ordinary care in this regard. In District of Columbia v. Woodbury, above cited on this point, it is said: "If a permit is granted, as is usually the case, the fact is notice to the authorities that the work is in progress, and then they are charged with the duty of seeing that it is properly conducted." To the same effect are the other cases referred to; also 2 Dillon on Municipal Corporations, section 1027; Deering on Negligence, section 163; 1 Shearman and Redfield on Negligence (5th Ed.), section 367, note 6.

Instruction 6 properly defined contributory negligence, for, as the plaintiff did not know of the obstruction of the street, unless he might by ordinary care have discovered it in time to have avoided injury, he might recover; and he had a right, in the absence of anything indicating the contrary, to assume that the street was safe, or reasonably so. Glasgow v. Gillenwaters (113 Ky., 140, 23 R., 2375), 67 S. W., 381; Pettengill v. Yonkers, 116 N. Y., 564, 22 N. E., 1095, 15 Am. St. Rep., 442.

One of the grounds assigned for new trial is that the city attorney, who was familiar with the facts, was not present at the trial. But there was no motion by the city to continue the case on account of the absence of the city attorney, and in the absence of such a motion it can not complain that the circuit court proceeded with the trial. A litigant can not go on with a trial, without objection, in the absence of its leading counsel, and then, when defeated, ask a new trial because he was not present. (Besides, we know judicially there are six divisions of the circuit court in Jefferson county, and it is impracticable for one man to be present in all the trials in all of these divisions, to say nothing of the cases in this court or the United States courts.)

While the verdict is large, we can not say, under the evidence, it is so large as to indicate passion or prejudice. The plaintiff is a young man at the opening of life. His right eye is entirely destroyed, his left is so affected he can not read with it, he suffered for months most intensely, and his intended career in life is destroyed.

The city did not seek by any pleading to recover against the negligent contractor. The authorities seem to be that in such cases the person using the street under the permit is liable to the city for any damages the city may sustain by reason of his neglect or failure to comply with the terms of the ordinance. 2 Dillon on Municipal Corporations, sections 1034, 1035; 2 Smith on Municipal Corporations, section 1305. But, as the city asserted no claim against the contractors, this question is not here presented.

On the whole case we perceive no substantial error to the prejudice of appellant, wherefore the judgment complained of is affirmed.

Judges Barker and O'Rear dissent.