[No. 15808. Department Two. October 13, 1920.]

ELIZABETH FRANKLIN, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.[1]

MUNICIPAL CORPORATIONS (407) — GOVERNMENTAL FUNCTIONS — TORTS OF OFFICERS—HEALTH QUARANTINE—LIABILITY. A city is not liable for the fraudulent acts of its police officers and board of health in a wrongful and malicious conspiracy to charge and imprison a person as having an infectious disease, since it is but performing a governmental function in enforcing quarantine regulations in the interest of public health.

Appeal from a judgment of the superior court for King county, Frater, J., entered September 10, 1919, upon sustaining a demurrer to the complaint, dismissing an action in tort. Affirmed.

[1]Reported in 192 Pac. 1015.

*William F. Hays,* for appellant.

*Walter F. Meier* and *Thomas J. L. Kennedy,* for respondent.

BRIDGES, J.—This was a suit for damages. A general demurrer to the complaint was sustained. Plaintiff refused to further plead and her action was dismissed. From this judgment, she has appealed.

The complaint alleged that the city of Seattle has created and maintained a "Board of Health" and a department of police; that these two departments conspired together to arrest certain persons accused by them of having some infectious or contagious disease; that it was a part of the conspiracy that, when the police had caused the arrest, the person so arrested would be placed in the city jail and there turned over to the board of health, which would make blood tests and give treatments for diseases which the person under arrest did not have, and under pretense of such treatment and the necessity therefor, would keep such person in confinement in the board of health department of the jail for long periods; that, on the 28th day of December, 1917, certain of the police officers of the city unlawfully and maliciously entered the home of the plaintiff, and, without having any warrant therefor, arrested her and forcibly took her into custody and to the city jail, and there falsely and maliciously caused her to be charged with being a "disorderly person," and set opposite her name the letters "B. T.," which letters, translated, meant "blood test;" that, as a part of the conspiracy, the health officer took charge of her and forcibly took from her arm quantities of blood for the pretended purpose of making a blood test; that thereafter the health officer maliciously and falsely charged her with having an infectious and

contagious disease, when in fact she had no such, or other, disease, of which fact the health officer had full knowledge; and that, without authority of law, plaintiff was maliciously confined in jail with other prisoners for more than one year, all to her great humiliation, disgrace and damage.

Stripped of the usual verbiage of pleading, the charge is that the city police, unlawfully and without cause, arrested plaintiff and put her in jail, and then turned her over to the city health officer, who made a blood test and falsely found that she had a certain disease, and kept her in jail for more than a year, and that all of this was done falsely, wrongfully and maliciously. The question is, Do these facts state a cause of action against the city of Seattle? We do not think they do. The only direct connection the city had with these transactions was that it created the board of health and appointed its officers, and created the police department and made appointments thereto, and owned the jail. Every other thing was done by the health officers and the policemen. They, and they alone, were guilty, if any one was, of all the wrong, fraud, conspiracy and maliciousness charged in the complaint. Under these facts, the city was but discharging a governmental duty cast on it by the state and is not liable. The rule governing cases of this general character is tersely and clearly laid down in *McIllhenney v. Wilmington,* 127 N. C. 146, 37 S. E. 187, 50 L. R. A. 470, where it is said:

"The non-liability of municipalities in such cases is based upon the ground that they are subdivisions of the state, created in part for convenience in enabling the state to enforce its laws in each locality with promptness, . . . and that while enforcing those laws which pertain to the general welfare of the state, and to the people generally in all its subdivisions, the

22—112 WASH.

state acts through these subdivisions, and uses them and their officers as its agent for the purposes for which a state government is instituted and granted sovereign power for state purposes; . . ."

The same immunity applies in the case of the quarantining of persons, because the city, in that instance, is engaged in the duties of the state and acting for it. In *Lynch v. North Yakima,* 37 Wash. 657, 80 Pac. 79, 12 L. R. A. (N. S.) 261, we said:

"The handling of persons sick with contagious diseases is a duty which the city performs, through its officers and agents, in the exercise of governmental functions. The benefits of such service go to the public, and not to the municipality as a corporate body. Hence, the manner in which the officers of the city perform said services cannot, ordinarily, render the municipality liable in damages."

See the following cases: *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847; *Howard v. Tacoma School Dist. No. 10,* 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917 D 792; *State ex rel. McBride v. Superior Court,* 103 Wash. 409, 174 Pac. 973; *Valentine v. Englewood,* 76 N. J. L. 509, 71 Atl. 344, 19 L. R. A. (N. S.) 262, and cases cited; 11 R. C. L. 812.

While the courts are not altogether in agreement as to where the line should be drawn showing when a municipality is, and when it is not, in the performance of a purely governmental duty, our attention has not been called to a single adjudicated case, where the facts were similar to those involved here, which did not hold as we here decide. We have no doubt the court was right in dismissing the case.

The judgment is affirmed.

Holcomb, C. J., Fullerton, Mount, and Tolman, JJ., concur.