[No. 26220.   *En Banc.*   April 8, 1937.]

V. A. HAGERMAN *et al., Appellants,* v. THE CITY OF
SEATTLE, *Respondent.*[1]

*Oscar A. Zabel* and *Albert H. Solomon,* for appellants.

*A. C. Van Soelen, C. C. McCullough,* and *T. M. Alderson, Jr.,* for respondent.

STEINERT, C. J.—Plaintiffs, a marital community, brought suit against the city of Seattle to recover damages for personal injuries to the plaintiff wife, resulting from a collision between a truck, owned by the city and operated by one of its employees, and an automobile in which the plaintiff wife was then riding as a guest.   At the conclusion of plaintiffs' case, the de-

[1] Reported in 66 P. (2d) 1152.

fendant challenged the sufficiency of the evidence and moved for a dismissal. The court granted the motion and subsequently dismissed the action with prejudice. Plaintiffs have appealed.

So far as this appeal is concerned, the negligence of the truck driver is conceded. The sole question in the case is whether, at the time of the collision, the respondent city, through its truck driver, was engaged in the exercise of a governmental function.

The facts necessary to present the point under consideration are, briefly, these: The truck was one maintained by the health department of the city. The driver was in the employ of that department. Upon the occasion in question, the driver was on his way from Firlands Sanatorium, which is a hospital for tubercular patients maintained partly by the respondent, and was proceeding toward the business section of the city. In the truck were several empty vegetable crates which were to be returned by the driver to a produce house on Western avenue, also five baskets of clean laundry destined for the city hospital, and a package of culture tubes containing tubercular bacilli which was intended for delivery to the main hospital. The articles were to be delivered to the various points of destination in the order above mentioned. The collision occurred at the intersection of west Eightieth street and Sixth avenue northwest, which is near the northerly limits of the city and a considerable distance from its main business section and from the several places where the deliveries were to be made.

The trial court held that, under these facts, the respondent city was engaged in the exercise of a governmental function and, therefore, was not liable for the negligence of the driver in the operation of the

truck. The single assignment of error challenges the correctness of that ruling.

A municipal corporation has a dual character and, consequently, performs a dual function. In its first aspect, it is governmental, public, or legislative; in its second, it is corporate, private, or proprietary. 1 Dillon on Municipal Corporations (5th ed.), p. 181, § 109; 6 McQuillin on Municipal Corporations (2nd ed.), p. 758, § 2792; *Seattle v. Stirrat*, 55 Wash. 560, 564, 104 Pac. 834, 24 L. R. A. (N. S.) 1275.

Proceeding upon this general division of character and functions of municipal corporations, the judicial decisions of this country have, with practical unanimity, declared and upheld the doctrine that municipalities are not liable for the negligence of their officers and employees when engaged in the performance of governmental or public duties, but are liable for their negligence when performing duties consequent upon the exercise, by the municipality, of its corporate or private powers. Illustrative cases from most of the states will be found in the footnotes to §§ 2792 and 2793 of the sixth volume of McQuillin's work on Municipal Corporations (2d ed.), and the same sections in the 1934 supplement thereto.

That doctrine has been consistently followed and upheld in this state in cases of strictly municipal corporations. *Russell v. Tacoma*, 8 Wash. 156, 35 Pac. 605, 40 Am. St. 895; *Sutton v. Snohomish*, 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847; *Simpson v. Whatcom*, 33 Wash. 392, 74 Pac. 577, 63 L. R. A. 815, 99 Am. St. 951; *Lynch v. North Yakima*, 37 Wash. 657, 80 Pac. 79, 12 L. R. A. (N. S.) 261; *Cunningham v. Seattle*, 40 Wash. 59, 82 Pac. 143, 4 L. R. A. (N. S.) 629; *Seattle v. Stirrat*, 55 Wash. 560, 104 Pac. 834, 24 L. R. A. (N. S.) 1275; *Hewitt v. Seattle*, 62 Wash. 377, 112 Pac. 1084, 32 L. R. A. (N. S.) 632; *Riddoch v. State*, 68

Wash. 329, 123 Pac. 450, Ann. Cas. 1913E, 1033, 42 L. R. A. (N. S.) 251; *Nelson v. Spokane,* 104 Wash. 219, 176 Pac. 149; *Hotel Cecil Co. v. Seattle,* 104 Wash. 460, 177 Pac. 347; *Franklin v. Seattle,* 112 Wash. 671, 192 Pac. 1015, 12 A. L. R. 247; *Whiteside v. Benton County,* 114 Wash. 463, 195 Pac. 519; *Stuver v. Auburn,* 171 Wash. 76, 17 P. (2d) 614; *Mola v. Metropolitan Park District,* 181 Wash. 177, 42 P. (2d) 435.

Many reasons have been assigned by the various courts for the immunity granted to municipal corporations when acting in a governmental capacity. Among the reasons, are the following: (1) The state is sovereign, and the municipality is its governmental agency; since the state may not be sued without its consent, therefore its agent cannot be; (2) the municipality derives no pecuniary benefit from the exercise of public functions; (3) members of municipal departments in the exercise of public governmental duties are agents of the state and not of the city, and' hence the doctrine of *respondeat superior* has no application; (4) it is necessary for the proper performance of governmental functions that a municipal corporation should not be liable for the negligence of its agents; (5) municipalities should not be liable for torts committed in the performance of duties imposed by the legislature, but only for those voluntarily assumed under general statutes; and (6) taxes raised for specific governmental purposes should not be permitted to be diverted to the payment of damage claims.

All of these reasons have been subjected to vigorous attack by various writers of monographs and comments appearing in legal periodicals. See 34 Yale Law Journal, pp. 1-45, 129-143, 229-258; 36 Yale Law Journal, pp. 1-41, 759-807, 1039-1100; 20 Columbia Law Review, p. 772; 34 Harvard Law Review, p. 66.

Despite these attacks, addressed to the foundation

and wisdom of the rule, the courts have, almost without exception, adhered to the precedent established by the decisions. One court forsook the doctrine for a brief period, *Fowler v. Cleveland,* 100 Ohio St. 158, 126 N. E. 72, 9 A. L. R. 131; but that case was very soon overruled, and the accepted doctrine was reaffirmed. *Aldrich v. Youngstown,* 106 Ohio St. 342, 140 N. E. 164, 27 A. L. R. 1497. It may now be said that the doctrine has become fixed as a matter of public policy, regardless of the reason upon which the rule is made to rest, and that any change therein must be sought from the legislature.

In passing, it may be noted that in at least the following instances, the doctrine of immunity does not apply: (1) Where the injury complained of is the taking or damaging of private property for public use, without compensation; (2) where damage or injury has been occasioned through the establishment, maintenance, or permission of a nuisance; and (3) where the right of action is based on the failure of the municipal corporation to use ordinary care in maintaining its streets, sidewalks, and public ways in a reasonably safe condition for travel in the usual modes. We are not, however, here concerned with any of these exceptional instances.

Returning to the thread of our discussion, we proceed upon the basis of the settled doctrine, just outlined, which recognizes and declares a distinction between governmental, or public, duties and corporate, or private, duties. But the mere statement of the doctrine, or rule, does not altogether solve the difficulty attendant upon the problem frequently presented. As many courts, including our own, have from time to time declared, the difficulty lies not in the statement of the governing principles of law, but in their application to particular facts. The question

thus arising is whether the act claimed to be negligent is performed in the exercise of governmental or public power, or of corporate private power. *Russell v. Tacoma,* 8 Wash. 156, 35 Pac. 605, 40 Am. St. 895; *Simpson v. Whatcom,* 33 Wash. 392, 74 Pac. 577, 99 Am. St. 951, 63 L. R. A. 815; *Mayne v. Curtis,* 73 Ind. App. 640, 126 N. E. 699; *Bolster v. Lawrence,* 225 Mass. 387, 114 N. E. 722, L. R. A. 1917B, 1285; *Hattiesburg v. Geigor,* 118 Miss. 676, 79 So. 846; *Harrington v. Greenville,* 159 N. C. 632, 75 S. E. 849; *Nashville v. Mason,* 137 Tenn. 169, 192 S. W. 915, L. R. A. 1917D, 914.

It is quite apparent that there are certain kinds of public service that only the government can adequately perform. First among these are the administration of justice, the maintenance of peace by the enforcement of the law, the protection of persons and property against the ravages of fire, and the preservation of the public health against sickness and disease. It is in these fields that the principle of immunity from torts has its widest application and place. The case now before us falls within the field of the department of health.

The safeguarding of the public health is almost uniformly held to be a governmental function, with the result that torts committed by health officers and their agents, in the performance of their duties, do not render the municipality liable.

"In the conservation of the public health in the various methods usually employed, municipal officers act in a strictly governmental capacity, in accordance with the uniform course of judicial judgments, and hence, no municipal liability for injury due to the negligent performance of such function can arise." 6 McQuillin on Municipal Corporations (2d ed.), p. 876, § 2840.

The exemption accorded the municipality in this field covers not only the immediate activities and facilities

exerted and used, but also those that are reasonably incident and appropriate to the operation of the health department. A breadth of illustration will be found in the following decisions and in the cases therein respectively cited. *Benton v. Santa Monica,* 106 Cal. App. 339, 289 Pac. 203; *Watson v. Atlanta,* 136 Ga. 370, 71 S. E. 664; *McCrary v. Rome,* 29 Ga. App. 384, 115 S. E. 283; *Tollefson v. Ottawa,* 228 Ill. 134, 81 N. E. 823, 11 L. R. A. (N. S.) 990; *Evans v. Kankakee,* 231 Ill. 223, 83 N. E. 223, 13 L. R. A. (N. S.) 1190, note; *Scott v. Indianapolis,* 75 Ind. App. 387, 130 N. E. 658; *Butler v. Kansas City,* 97 Kan. 239, 155 Pac. 12, Ann. Cas. 1918D, 801, L. R. A. 1916D, 626; *Frost v. Topeka,* 98 Kan. 636, 161 Pac. 936, L. R. A. 1917C, 429; *Twyman's Adm'r v. Board of Council,* 117 Ky. 518, 78 S. W. 446, 64 L. R. A. 572; *Browder v. Henderson,* 182 Ky. 771, 207 S. W. 479; *Zachert v. Louisville,* 214 Ky. 132, 282 S. W. 1071; *Van Pelt v. Louisville,* 257 Ky. 256, 77 S. W. (2d) 942; *Benton v. Trustees of City Hospital,* 140 Mass. 13, 1 N. E. 836, 54 Am. Rep. 436; *Young v. Worcester,* 253 Mass. 481, 149 N. E. 204; *Zummo v. Kansas City,* 285 Mo. 222, 225 S. W. 934; *Prichard v. Board of Commissioners,* 126 N. C. 908, 36 S. E. 353, 78 Am. St. 679; *Lloyd v. Toledo,* 42 Ohio App. 36, 180 N. E. 716; *Spaur v. Pawhuska,* 172 Okla. 285, 43 P. (2d) 408; *Howard v. Philadelphia,* 250 Pa. St. 184, 95 Atl. 388, L. R. A. 1916B, 917, note; *Wallwork v. Nashville,* 147 Tenn. 681, 690, 251 S. W. 775; *McAllen v. Gartman,* 81 S. W. (2d) (Tex. Civ. App.) 147.

This court is in line with the trend of these decisions, in the latitude accorded to the exemption from municipal liability for negligence in the performance of duties pertaining to health service. In *Lynch v. North Yakima,* 37 Wash. 657, 80 Pac. 79, 12 L. R. A. (N. S.) 261, wherein the plaintiff, in one of his causes of ac-

tion, sought to recover for the city's negligence in exposing him to contact with a person having smallpox, a demurrer to the complaint was sustained, and judgment of dismissal was entered. In affirming the judgment, this court said:

"The handling of persons sick with contagious diseases is a duty which the city performs, through its officers and agents, in the exercise of governmental functions. The benefits of such service go to the public, and not to the municipality as a corporate body. Hence, the manner in which the officers of the city perform said service cannot, ordinarily, render the municipality liable in damages."

The underlying test in distinguishing governmental functions from corporate functions and, consequently, in determining the liability or nonliability of the municipality for the torts of its officers and agents, is, in this state, whether the act performed is for the common good of all, that is, for the public, or whether it is for the special benefit or profit of the corporate entity.

We have many cases where the rule is stated in one form of expression or another. In *Russell v. Tacoma,* 8 Wash. 156, 35 Pac. 605, 40 Am. St. 895, recovery was sought for injuries sustained by the plaintiff from the explosion of powder and dynamite during the course of work done on a public park. It was held that, in improving the park, the city was exercising a power or franchise conferred upon it for the public good and not for private corporate advantage, and that, therefore, the city was not liable for the acts or omissions of its officers in that behalf.

In *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847, where a pedestrian was injured by falling into an excavation in the street, the court held the city liable on the ground that the laying out, repairing, and construction of streets by a chartered

municipal corporation did not call forth the exercise of strictly governmental functions. However, the distinction between such functions and those relating to police, fire, and health protection was clearly drawn by the court in the following language:

"In preserving the peace, caring for the poor, preventing the destruction of property by fire, and preserving the public health, it [the municipality] assumes duties which are said to be in their nature solely governmental (Jones on Negligence of Municipal Corporations, ch. IV), and for the nonexercise, or negligent exercise, of which the corporation is not generally liable to individual citizens. But the duty to keep streets in repair is a municipal or ministerial duty, for a breach of which an action will lie in favor of a party injured thereby."

In *Simpson v. Whatcom,* 33 Wash. 392, 74 Pac. 577, 63 L. R. A. 815, 99 Am. St. 951, the court, after stating that the controlling question in this character of cases is whether or not the officers to whom are attributed the delinquencies which result in the damage alleged are the agents of the city, made this general deduction: Whenever the damaging action or the neglect of the officers arises in the execution of a duty which is for the exclusive benefit of the city, the city is liable; but if the duty, in whole or in part, is one imposed upon the city as a public instrumentality of the state, the city is not liable.

In *Lynch v. North Yakima,* 37 Wash. 657, 80 Pac. 79, 12 L. R. A. (N. S.) 261, from which we have already quoted, plaintiff, who was a teamster in the city fire department, sought, in one of his causes of action, to recover damages from the city for injuries received by him while training a horse to respond to a fire bell. In denying him recovery, this court said:

"The duties of an officer or employee of a fire department are regarded as for the benefit of the community, and not for the mere advantage of the munic-

ipality as a corporate body. The city, possessing, as it does, a portion of the sovereignty of the state, in the exercise thereof provides and maintains a fire department. The services of this department are for the benefit of all persons who may have property in the city limits capable of injury by fire. It would seem, therefore, that in creating, maintaining, and operating the fire department, the city was exercising governmental functions. This seems to have been the view entertained by the courts that have considered this subject.''

In *Cunningham v. Seattle,* 40 Wash. 59, 82 Pac. 143, 4 L. R. A. (N. S.) 629, a horse, belonging to the city as a part of its fire department, was allowed to trespass upon and injure plaintiff's lawn. Recovery was denied on the ground that the maintenance of a fire department by a municipal corporation was the exercise of a public or governmental function, exempting the municipality from liability for the negligent acts of the members of the fire department.

In *Hotel Cecil Co. v. Seattle,* 104 Wash. 460, 177 Pac. 347, after quoting the deduction drawn by this court in *Simpson v. Whatcom,* 33 Wash. 392, 74 Pac. 577, 63 L. R. A. 815, 99 Am. St. 951, to which we have already alluded, the opinion proceeds as follows:

''Thus it appears clear that the test of liability is, does the act arise in the execution of a duty which is for the exclusive benefit of the city, rather than whether it is an act of *negligence or trespass of the officer,* . . .''

In the case at bar, it appears that the city maintained hospitals for particular, as well as for general, diseases. It also maintained testing laboratories. Food supplies and linens are, of course, essential to proper hospitalization. The testing laboratory is a basic adjunct to the science of medicine. The use of food supplies, the change of linens, and the functions

of the laboratory, are all dependent upon prompt deliveries at proper times. For that purpose, the health department maintained and operated its own truck. The operation of the truck facilitated an expeditious administration of the health service and was a means of coordinating the several hospitals and their adjuncts. The truck was no more for the special benefit of the municipality than were the hospitals and, in a sense, no less essential for the care, comfort, and treatment of the patients therein.

The service rendered by the truck was in the interest of the public generally and not for the city specially. It was a part of the health department and was aiding in the discharge of the various functions of that department. Its function was to aid in the service to which the health department was dedicated. The function of the health department is governmental, and, in the exercise of that function, the city is exempt from liability for the negligence of its officers and employees.

The judgment is affirmed.

MILLARD, MAIN, TOLMAN, HOLCOMB, BEALS, GERAGHTY, and ROBINSON, JJ., concur.

BLAKE, J. (dissenting)—I am opposed to the extension of the doctrine of immunity from liability of municipal corporations for negligence to the operation of motor vehicles on the streets and highways, except as to fire apparatus, police cars, and ambulances responding to emergency calls.

It is true that the suggested limitation is not recognized by a majority of the courts, and that it was expressly repudiated by our own fire horse cases (*Lynch v. North Yakima*, 37 Wash. 657, 80 Pac. 79, 12 L. R. A. (N. S.) 261; *Cunningham v. Seattle*, 40 Wash. 59, 82 Pac. 143), decided in 1905. But if the principle laid

down in those cases be deemed to be controlling, it is time, in the light of modern conditions of traffic on the streets and highways, that it be reexamined. There are at least two reasons justifying a departure from the rule of those cases: First, they were four to three decisions; second, there is a distinct trend in modern authority to limit rather than extend the doctrine of immunity—particularly as applied to the operation of motor vehicles. *Johnston v. Chicago*, 258 Ill. 494, 101 N. E. 960, Ann. Cas. 1914B, 572, 45 L. R. A. (N. S.) 1167; *Jones v. Sioux City*, 185 Iowa 1178, 170 N. W. 445, 10 A. L. R. 474; *Oklahoma City v. Foster*, 118 Okla. 120, 247 Pac. 80, 47 A. L. R. 822; *Maxwell v. Miami*, 87 Fla. 107, 100 So. 147, 33 A. L. R. 682; *Tallahassee v. Kaufman*, 87 Fla. 119, 100 So. 150. The *Jones* and *Foster* cases involved negligent maintenance and/or operation of police cars. The *Maxwell* and *Kaufman* cases involved the negligent operation of fire apparatus.

Our own case of *Hewitt v. Seattle*, 62 Wash. 377, 113 Pac. 1084, 32 L. R. A. (N. S.) 632, is in line with this modern trend. In that case, the court held the city liable to a pedestrian negligently run down by its superintendent of streets while in the performance of his duty. It is true that the holding is predicated on the theory that the city, in the maintenance of its streets, is acting in a proprietary, not a governmental, capacity. Therefore, it is liable for the negligence of its employee in operating the automobile.

In the instant case, the court holds that, in operating the sanitarium, the city was acting in a governmental capacity. Therefore, it is not liable for the negligence of the driver of the supply truck. It seems to me this distinction is based upon pure fiction. The function with which the court is really concerned in these cases is not the operation of a sanitarium or the

maintenance of streets, but the operation of motor vehicles on the highways. The supply truck and the automobile driven by the superintendent of streets are equally menacing to life and limb, and are equally unnecessary to the governmental existence of the municipality. If the city is liable for the negligent operation of the one, I can see no sound reason why it should be immune from liability for the negligent operation of the other.

The illogical .consequences exemplified by these two cases are bound to follow, if liability is to be determined by the character of the municipal department to which the vehicle is assigned for ·service, rather than by the character of use to which the vehicle is put. For, the line of demarcation between what is and what is not a governmental function is very thin. In final analysis, the category into which a function falls depends on the viewpoint of a majority of the court in any particular case. By a majority of one, the supreme court of the United States has just held that the water system of New York city "was created and is conducted in the exercise of the city's governmental functions." *Brush v. Commission of Internal Revenue*, 300 U. S. 352, 57 S. Ct. 495.

On the other hand, this court has held that, "in the maintenance and operation of its water works," a municipality acts "in a proprietary and not a governmental capacity," (*Bjork v. Tacoma*, 76 Wash. 225, 135 Pac. 1005, 48 L. R. A. (N. S.) 331) notwithstanding, as pointed out in the *Brush* case:

" 'No higher police duty rests upon municipal authority . . . than that of furnishing an ample supply of pure and wholesome water for public and domestic uses. The preservation of the health of the community is best obtained by the discharge of this duty, to say nothing of the preservation of property from fire, so constant an attendant upon crowded conditions of municipal life.' "