**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 23, 2023

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 23, 2023

*Erin L. Lennon*
ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KYLIE HANSON, individually, | ) | |
| | ) | |
| Petitioner, | ) | No. 99823-0 |
| v. | ) | |
| | ) | En Banc |
| MIRIAM GONZALEZ CARMONA and JOHN DOE CARMONA, husband and wife, individually, and the marital community comprised thereof, | ) ) ) ) | Filed: <u>March 23, 2023</u> |
| | ) | |
| Respondents, | ) | |
| | ) | |
| SOUTHEAST WASHINGTON OFFICE OF AGING AND LONG TERM CARE ADVISORY COUNCIL, a Washington non-profit corporation, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

WHITENER, J.— This case concerns whether RCW 4.96.020(4), a presuit claims notice statute under which one must provide local governmental entities with notice of an alleged claim 60 days before filing the claim, applies when a plaintiff sues a governmental employee acting in the scope of her employment, in her individual capacity. Also at issue is whether said statute violates separation of powers because it conflicts with CR 3(a).

*Hanson v. Carmona*, No. 99823-0

The present case arises from a car accident in which Miriam Gonzalez Carmona[1] ran a red light and hit Kylie Hanson's car. At the time, Carmona was driving home from an out of town work training, driving a car owned by her employer, Southeast Washington Office of Aging and Long Term Care (SEW ALTC). Hanson filed a complaint against Carmona individually and the SEW ALTC Advisory Council (Advisory Council), under a theory of vicarious liability alleging Carmona was acting within the scope of her employment at the time of the accident.

The Advisory Council and Carmona moved for summary judgment because Hanson did not comply with RCW 4.96.020(4)'s presuit notice requirement to sue a government entity or its employees for tortious conduct and the statute of limitations had run. Hanson then amended her complaint to remove all references to the Advisory Council and the allegations that Carmona was acting in the scope of employment. The trial court granted summary judgment in favor of the Advisory Council, but it allowed the case to proceed forward against Carmona in her individual capacity. The Court of Appeals reversed.

We affirm the Court of Appeals on different grounds. We hold that RCW 4.96.020(4) applies when an employee is acting within the scope of employment but is sued in their individual capacity. The plain language of the statute encompasses

---

[1] Although she has two last names we refer to Miriam Gonzalez Carmona as "Carmona" to be consistent with her briefing.

2

*Hanson v. Carmona*, No. 99823-0

acts within the scope of employment and the government entity, not the employee, is bound by any judgment, even if not technically sued. Accordingly, the legislature can require presuit notices for employee acts committed within the scope of employment.

In addition, we hold that this statute does not violate separation of powers because, although RCW 4.96.020(4) and CR 3(a) conflict, the legislature has the power to decide conditions precedent to suing the State under article II, section 26 of the Washington Constitution. We remand to the trial court to enter summary judgment in favor of Carmona.

FACTS AND PROCEDURAL HISTORY

On September 6, 2016, Hanson and Carmona were involved in a car accident. Carmona ran a red light and collided with Hanson's vehicle, injuring Hanson. At the time of the accident, Carmona was on her way home from attending a training program in Spokane and was driving a vehicle owned by her employer SEW ALTC. "SEW ALTC is an Area Agency on Aging, established pursuant to RCW 74.38 to administer grants for programs for older individuals and adults with disabilities within Asotin, Benton, Columbia, Franklin, Garfield, Kittitas, Walla Walla and Yakima Counties." Clerk's Papers at 17-18.

On August 26, 2019, Hanson's complaint was filed against Carmona individually and together with her husband, for damages as a result of Carmona's

3

*Hanson v. Carmona*, No. 99823-0

negligence, and against the Advisory Council for liability as Carmona's employer. In the complaint, Hanson alleged that Carmona was acting within the scope of her employment at the time of the accident.

On October 7, Carmona and the Advisory Council moved for summary judgment. In the motion, Carmona and the Advisory Council alleged that Hanson did not serve SEW ALTC, a governmental entity, with the statutorily required notice of claim under RCW 4.96.020. Under RCW 4.96.020(4),

> [n]o action subject to the claim filing requirements of this section shall be commenced against any local governmental entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim has first been presented to the agent of the governing body thereof.

Accordingly, Carmona and the Advisory Council argued that because Hanson did not comply with RCW 4.96.020, and because the statute of limitations had run, they were entitled to dismissal with prejudice.

On October 28, 2019, Hanson amended the complaint to remove the Advisory Council as a named defendant and to remove all allegations that Carmona was acting within the scope of her employment. This left Carmona and her husband as the only defendants. Hanson also filed a response to the motion for summary judgment, alleging that Carmona is personally liable regardless of her employer.

On the motion for summary judgment, the trial court dismissed the Advisory Council from the case but ruled that the case could proceed against Carmona in her

4

*Hanson v. Carmona*, No. 99823-0

individual capacity. The trial court certified the partial summary judgment order for discretionary review in the Court of Appeals.

The Court of Appeals reversed. *Hanson v. Carmona*, 16 Wn. App. 2d 834, 837, 491 P.3d 978 (2021).[2] The court held that the presuit notice requirement does apply to a case where the plaintiff sues the employee without suing the employer. *Id*. at 842-43. Further, relying on the "fractured opinion" in *McDevitt v. Harborview Medical Center*, 179 Wn.2d 59, 316 P.3d 469 (2013), the Court of Appeals held that RCW 4.96.020(4) is constitutional under separation of powers, but it "welcome[d]" this court to revisit the issue. *Hanson*, 16 Wn. App. 2d at 852.

Hanson appealed the issues of whether RCW 4.96.020(4) violates separation of powers as applied and whether the legislature can extend sovereign immunity to a "private party." Pet. for Rev. at 2-3. This court granted review.

There are two amicus briefs in this case, both in support of Carmona: one by the State of Washington through the Attorney General's Office (hereinafter the State AGO) and the other by Washington Cities Insurance Authority, Washington Counties Risk Pool, Enduris, Association of Washington Cities, and Washington State Transit Insurance Pool (hereinafter WCIA et al.).

---

[2] This case was originally unpublished, but the Court of Appeals granted a motion to publish.

5

*Hanson v. Carmona*, No. 99823-0

ANALYSIS

I.      Standard of Review

When reviewing a summary judgment order, "[w]e engage in the same inquiry

as the superior court." *Lakehaven Water & Sewer Dist. v. City of Federal Way*, 195

Wn.2d 742, 752, 466 P.3d 213 (2020).

We review constitutional issues and issues of statutory interpretation de novo.

*State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012); *Putman v. Wenatchee*

*Valley Med. Ctr., PS*, 166 Wn.2d 974, 978, 216 P.3d 374 (2009).

II.     Our legislature has extended sovereign immunity protections to
        government employees acting within the scope of employment

Under article II, section 26 of the Washington Constitution, "[t]he legislature

shall direct by law, in what manner, and in what courts, suits may be brought against

the state."

"The doctrine of governmental immunity springs from the archaic concept

that 'The King Can Do No Wrong'" and has been the subject of much criticism.

*Kelso v. City of Tacoma*, 63 Wn.2d 913, 914, 390 P.2d 2 (1964). Nonetheless, the

state of Washington enjoyed this immunity for many decades. This sovereign

immunity applied not only to actions by the State but also "municipal corporations

when acting in a governmental capacity." *Hagerman v. City of Seattle*, 189 Wash.

694, 697, 66 P.2d 1152 (1937). A core reason for this municipal immunity was "[t]he

6

state is sovereign, and the municipality is its governmental agency; since the state

may not be sued without its consent, therefore its agent cannot be." *Id*.

In 1961, the legislature waived the State's sovereign immunity "for damages

arising out of its tortious conduct." LAWS OF 1961, ch. 136, § 1; *see also* LAWS OF

1963, ch. 159, § 2. In 1963, the legislature also added the requirement that prior to

filing suit against the State for damages from tortious conduct, the aggrieved party

must comply with presuit claim notice procedures. LAWS OF 1963, ch. 159, §§ 3-4.

The specifics of said procedures have been amended multiple times. These laws are

codified in chapter 4.92 RCW.

In 1964, this court held that because the legislature had waived the State's

sovereign immunity, without specifically preserving the immunity of municipalities,

the city of Tacoma was liable for any tortious conduct at the time of the automobile

collision at issue. *Kelso*, 63 Wn.2d at 918-19. Shortly thereafter, in 1967, the

legislature codified the waiver of sovereign immunity for municipalities and created

municipal claim notice procedures akin to those for the State. LAWS OF 1967, ch.

164, §§ 1, 4. These laws are codified in chapter 4.96 RCW and form the basis of the

present case.

Decades later, in *Hardesty v. Stenchever*, 82 Wn. App. 253, 255, 917 P.2d 577

(1996), the Court of Appeals examined RCW 4.92.100 and 4.92.210, which set out

the presuit claim procedures for filing a tort claim against the State. Hardesty filed a

medical negligence suit against her doctor (Stenchever), the University of Washington Medical Center (UWMC) and the State, but she did not comply with the requirements under RCW 4.92.100. *Id*. at 255. The defendants moved for summary judgment, and the trial court dismissed the action as to the State and UWMC but allowed claims against the doctor to move forward. *Id*. at 256. The trial court "indicated it was allowing the case against Stenchever to proceed because he was acting in his individual capacity when he made decisions about Hardesty's medical care." *Id*. at 260. The Court of Appeals reversed, concluding that Stenchever's actions were within the scope of his employment as a state employee. *Id*. at 260-61. In addition, because the actions were in the scope of his employment, he could ask the State to defend him under RCW 4.92.060. *Id*. at 260.  Under RCW 4.92.070, the attorney general must grant the request if the acts were purported to be in good faith within the scope of the employee's duties. *Id*. And under RCW 4.92.075, if a judgment were entered against the employee, the judgment creditor can seek satisfaction only from the State and there is no lien on the employee's property. *Id*. "The suit, therefore, exposes state funds to liability, making this precisely the type of case to which RCW 4.92 applies." *Id*. at 261. Accordingly, the case against the physician should have been dismissed on the same grounds it was dismissed against the State and UWMC. *Id*.

*Hanson v. Carmona*, No. 99823-0

In 2003, the Court of Appeals extended this principle to chapter 4.96 RCW in *Woods v. Bailet*, 116 Wn. App. 658, 67 P.3d 511 (2003). In that case, Woods sued her doctors, but the trial court dismissed the lawsuit because Woods did not file the required claim notice. *Id*. at 662. On appeal, Woods claimed she was suing her doctors in their individual capacities, so RCW 4.96.010 does not apply. *Id*. at 665. The Court of Appeals affirmed, citing *Hardesty*, concluding,

> [the government entity] itself is protected by the claim-filing statute, and [its] funds are exposed to liability by lawsuits against its doctors for acts committed within the scope of their employment. Accordingly, in this case, as in *Hardesty*, the claim-filing statute applies to a lawsuit against [the entity]'s doctors to the same extent that it would apply to a lawsuit against [the entity].

*Id*. at 666-67.

In *Bosteder v. City of Renton*, 155 Wn.2d 18, 23, 117 P.3d 316 (2005) (plurality opinion), this court examined former RCW 4.96.020 (2001). At that time, former RCW 4.96.020(4), setting out the claim notice procedures, read, "No action shall be commenced against any local governmental entity for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof." *See also Bosteder*, 155 Wn.2d at 57 n.22. Five justices held that this claim notice statute did *not* apply to individuals as the legislature did not explicitly state that it did, only that it applied to *entities*. *See id*. at 58 (Sanders, J., concurring in part, dissenting in part) ("the claim filing statute applies only to local governmental entities, not to individuals"), 59

9

(Ireland, J. Pro Tem., concurring in part and dissenting in part) ("I agree with the majority except as it holds that the claim filing statute applies to individuals. The statute does not state so, and I do not think we should second-guess the wisdom of the legislature in failing to provide this protection for individuals.").

In response, the legislature amended former RCW 4.96.020(4) in 2006 to read, "No action shall be commenced against any local governmental entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof." LAWS OF 2006, ch. 82, § 4 (underlining denoting added language). Similar language to include officers, employees, and volunteers was added to the related statutes concerning State claim procedures. *See generally id.* (adding similar language to RCW 4.92.100, .110). In *State v. Clark*, 178 Wn.2d 19, 24, 308 P.3d 590 (2013), this court recognized that *Bosteder* was superseded by statute. At issue in the present case is whether the statute requiring presuit notice to the government applies to employees acting within the scope of employment but being sued in their individual capacity. For the reasons set forth below, we conclude that it does.

10

*Hanson v. Carmona*, No. 99823-0

III. RCW 4.96.020(4) requires that plaintiffs give notice to the government agency when suing its employee acting within the scope of their employment, even when the employee is sued in their individual capacity

Hanson contends that "[a] case against an employee in their individual capacity is not a case against the sovereign state" and therefore the presuit notice requirement does not apply. Pet'r's Suppl. Br. at 4. In contrast, Carmona contends that the presuit notice requirement applies because she was acting in the scope of her employment at the time of the accident and because the government will be bound by any judgment against her. Resp'ts' Suppl. Br. at 4. We agree with Carmona. The plain text of RCW 4.96.020(4), coupled with the settled common law of respondeat superior and sovereign immunity under our state constitution and our specific indemnity statute, leads to the conclusion that the presuit notice requirement applies to employees acting within the scope of employment, even when sued individually.

a. The plain text of the statute supports that "capacity" includes all acts within the scope of employment

When interpreting a statute, "[t]he court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We discern plain meaning "from all that the Legislature has

11

*Hanson v. Carmona*, No. 99823-0

said in the statute and related statutes which disclose legislative intent about the provision in question." *Id*. at 11.

RCW 4.96.020(1) and (4) read,

(1) The provisions of this section apply to claims for damages against all local governmental entities and their officers, *employees*, or volunteers, *acting in such capacity*.

....

(4) No action subject to the claim filing requirements of this section shall be commenced against any local governmental entity, or against any local governmental entity's officers, *employees*, or volunteers, *acting in such capacity*, for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim has first been presented to the agent of the governing body thereof. . . .

(Emphasis added.) The key phrase in both subsections (1) and (4) is "employees … acting in such capacity." The plain language of the statute thus requires presuit notice for a governmental employee's tortious conduct when that employee is "acting in such capacity."

"To discern the plain meaning of undefined statutory language, we give words their usual and ordinary meaning and interpret them in the context of the statute in which they appear." *Newton v. State*, 192 Wn. App. 931, 936-37, 369 P.3d 511 (2016) (citing *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 395-96, 325 P.3d 904 (2014)). The word "capacity" is not defined in the statute, so we may look to dictionary definitions. *See Nissen v. Pierce County*, 183 Wn.2d 863, 881, 357 P.3d 45 (2015). Because capacity is a familiar legal concept, we can also look to a legal dictionary. *Cashmere Valley Bank v. Dep't of Revenue*, 181 Wn.2d

12

*Hanson v. Carmona*, No. 99823-0

622, 634, 334 P.3d 1100 (2014) (using *Black's Law Dictionary* to define the term

"secured," giving it its legal meaning as it is a "familiar legal term").

 "Capacity" is defined as

> **2 :** legal qualification, competency, power, or fitness **3 a :** ABILITY, CALIBER, STATURE **b :** mental power, capability, and acumen, blended to enable one to grasp ideas, to analyze and judge, and to cope with problems . . . **c :** blended power, strength, and ability… **d :** capability or faculty for executing, considering, appreciating, or experiencing . . . **4 a** . . . **:** a situation enabling or making capable . . . **b :** a position, character, or role either duly assigned or assumed without sanction . . . .

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 330 (2002). Similarly, *Black's*

*Law Dictionary* defines "capacity" as "[t]he role in which one performs an act; esp.,

someone's job, position, or duty." BLACK'S LAW DICTIONARY 257 (11th ed. 2019).

Under either definition it follows that "capacity" includes fulfilling a role an

employee has been assigned by that governmental agency. This would include acts

within the scope of employment as the act is being performed because of someone's

job. Therefore, under the plain language of the statute, the presuit notice requirement

applies to all acts taken by government employees acting within the scope of

employment, even when the governmental agency is not sued.

> b. Washington courts have long held that government entities can act only through their employees and that acts within the scope of employment are acts of the government entity

In addition to the plain language of the statute, this court has long held that

the acts of an employee within the scope of employment are the acts of the

13

government entity itself. In *Kelso*, 63 Wn.2d at 914, this court concluded that a police officer who negligently injured a motorist while driving on duty was acting on behalf of the city. "Tacoma was liable for *its* tortious conduct, if any, at the time of the automobile collision in which the plaintiff was injured." *Id.* at 919 (emphasis added). The court equated the actions of the police officer and the actions of the local government for which he worked. *Id*. at 917-18. *Kelso* made no distinction between a lawsuit brought against the police officer in his individual capacity and a lawsuit brought against a police officer in his official capacity. Instead, we held that a police officer's tortious conduct, while *acting in the scope of employment*, is the equivalent of the tortious conduct of the city in which he was employed. The holding in *Kelso* is consistent with long-standing vicarious liability principles under common law.

In *Houser v. City of Redmond*, 91 Wn.2d 36, 586 P.2d 482 (1978), we held that a discharged police officer could not sue the city for tortious interference with his employment contract. The officer was discharged for unlawfully tape-recording coworkers making derogatory comments about the chief of police and other officers. *Id*. at 37. In holding that the city could not, as a matter of law, tortiously interfere with its own contract, the court stated,

> A municipal corporation, like any corporation, can act only through its agents, and *when its agents act within the scope of their employment their actions are the actions of the city itself*. Thus, if Redmond's

14

employees were acting within the scope of their employment, their actions were Redmond's, and no interference claim will lie.

If, on the other hand, the actions of the employees were not within the scope of employment, *then they are third parties potentially liable in their individual capacities*. However, if these actions were outside the scope of employment, their actions are not chargeable to Redmond and Redmond cannot be held liable under the doctrine of respondeat superior.

*Id.* at 40 (emphasis added) (citation omitted). Thus, acting within one's scope of employment is the same as the governmental agency acting. In this case, if Carmona was negligent in driving a government vehicle, and she was driving within the scope of her employment (which is undisputed), then she was acting in her capacity as a government employee and her negligence is the negligence of her governmental employer.

In a more recent Public Records Act (PRA), ch. 42.56 RCW, case, *Nissen v. Pierce County*, 183 Wn.2d 863, 869, 357 P.3d 45 (2015), the court considered whether text messages sent and received by a public employee "in the employee's official capacity" are public records of the employer under the PRA, even if the employee uses a private cell phone. Nissen, a sheriff's detective, sent two PRA requests to Pierce County seeking records relating to former prosecutor Mark Lindquist. She sought all telephone records, including text messages, for any cell phone he used, including his private cell phone, during a particular period. *Id.*

This court said,

15

*Hanson v. Carmona*, No. 99823-0

> [E]very agency the PRA identifies is a political body arising under law (e.g., a county). But those bodies lack an innate ability to prepare, own, use, or retain any record. They instead act exclusively through their employees and other agents, and *when an employee acts within the scope of his or her employment, the employee's actions are tantamount to "the actions of the [body] itself."*

*Id.* at 876 (emphasis added) (quoting *Houser*, 91 Wn.2d at 40).

This court "[i]ntegra[ted] this basic common law concept" into the PRA to hold that a record that an agency employee "prepares, owns, uses, or retains in the scope of employment is necessarily a record 'prepared, owned, used, or retained by [a] state or local agency.'" *Id*. at 876. The court equated the prosecutor sending text messages "in his official capacity" with the prosecutor sending text messages while "acting within the scope of his employment." *Id.* at 881-82.

Lower appellate courts have relied on this well-established legal principal in multiple different contexts. *See West v. Vermillion*, 196 Wn. App. 627, 635, 384 P.3d 634 (2016) (under PRA, when agency employee or other agent acts within the scope of their employment, their actions are tantamount to actions of the agency itself); *Broyles v. Thurston County*, 147 Wn. App. 409, 428, 195 P.3d 985 (2008) (county can be liable for discriminatory actions of county prosecutor because municipal corporation agents acting within scope of their employment are actions of the municipal corporation itself); *Mauch v. Kissling*, 56 Wn. App. 312, 316, 783 P.2d 601 (1989) (Boy Scouts of America would be liable as a corporation for the actions of its agent if individual who committed tort was acting with apparent

16

*Hanson v. Carmona*, No. 99823-0

authority of corporation because the actions of agents are actions of the corporation itself). Thus, acts within the scope of employment are within one's capacity as a governmental employee, and this case falls squarely within RCW 4.96.020's presuit notice requirement.

> c. The scope of article II, section 26 of the Washington Constitution contemplates ordinary torts within the scope of employment

Hanson argues that suits against an employee in their individual capacity, instead of their "official capacity," do not implicate sovereign immunity. Pet'r's Suppl. Br. at 6-7. However, the scope of article II, section 26 is not so limited.

First, as discussed above, our respondeat superior case law establishes that an employee taking an act within the scope of their government employment is an act of the governmental entity. Therefore, acts within the scope of employment are done within one's official capacity whether one is sued in their individual or official capacity.

Second, article II, section 26 is not limited to lawsuits filed against State in title. It provides, "The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." RCW 4.92.090, enacted pursuant to this constitutional provision, provides,

> The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation.

*Hanson v. Carmona*, No. 99823-0

RCW 4.96.010, the statute extending the abolition of sovereign immunity to local governments, uses similar wording. *McDevitt*, 179 Wn.2d at 65.

Our court has previously interpreted article II, section 26 and RCW 4.92.090 very broadly:

> This [waiver] statute is "one of the broadest waivers of sovereign immunity in the country" and makes the State presumptively liable for its alleged tortious conduct "in all instances in which the Legislature has *not* indicated otherwise."

*H.B.H. v. State*, 192 Wn.2d 154, 179, 429 P.3d 484 (2018) (quoting *Savage v. State*, 127 Wn.2d 434, 444-45, 899 P.2d 1270 (1995)).

The waiver statute explicitly makes the State liable to the same extent as if it were a private person or corporation. *Id.* So, "when assessing the State's liability, it is appropriate to draw analogies between the State's conduct and comparable conduct performed in the private sector." *Id.* This would include acts committed by employees within the scope of employment as the legislature has *not* indicated that the State's respondeat superior liability differs from the respondeat superior liability of a private entity.

While "the waiver is not without limitations," the limits have typically been procedural in nature, such as requiring notice of claims, restricting execution on judgments, and providing a specific fund from which the payment of claims and judgments must be made. Debra L. Stephens & Bryan P. Harnetiaux, *The Value of Government Tort Liability: Washington State's Journey from Immunity to*

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Hanson v. Carmona*, No. 99823-0

*Accountability*, 30 SEATTLE U. L. REV. 35, 42 (2006).  The Washington Legislature has partially restored immunity for certain limited types of conduct, such as a statute relieving state liability for damage or injury due to existence of structures over a specified height spanning public highways, or a statute providing conditional immunity for the release of information regarding sex offenders, or a statute granting qualified immunity to municipal employees with responsibilities for electrical utilities.  *Id*. at 43 n.45.  "The legislature has not retreated whatsoever from the notion of a broad waiver of sovereign immunity.  In fact, the opposite is true."  *Id*. at 43.

In her 2006 article, Justice Stephens argued that the waiver covered both liability for "'ordinary torts,' such as negligent driving or medical malpractice, which may be committed by public and private actors alike," as well as tortious conduct committed in the course of making governing decisions.  *Id.* at 52-54.  The reasoning of this article was cited with approval by this court in *McDevitt*, in which we upheld presuit filing notice requirements as constitutional and a proper exercise of sovereign power under article II, section 26.  179 Wn.2d at 66-67.

The legislature's power to waive sovereign immunity under article II, section 26 is not restricted to those torts for which a plaintiff has chosen to sue both the governmental agency along with the governmental tortfeasor acting within the scope of employment or those torts for which a plaintiff chooses to sue the governmental tortfeasor in their official capacity versus in their individual capacity. Our court

19

certainly did not indicate this level of specificity when it recognized the legislature's amendment to RCW 4.96.020: "In response to our decision in *Bosteder*, the legislature amended RCW 4.96.020 to provide *that claims against individual government employees are subject to the claims filing statute*." *Wright v. Terrell*, 162 Wn.2d 192, 195 n.1, 170 P.3d 570 (2007) (citing LAWS OF 2006, ch. 82, § 3). This is not restricted to those claims filed against an employee in their "official capacity," as opposed to their "individual capacity," as Hanson suggests.

Further, relying on precedent, our Court of Appeals has held that the presuit notice statutes apply when a government employee acts within the scope of employment. As discussed in more detail above, in *Hardesty* and *Woods*, the Court of Appeals recognized that suits against individuals acting within the scope of employment are subject to the presuit notice requirements because acts of an employee within the scope of employment are acts of the governmental entity. Further, as discussed in more detail below, even when sued individually, the State is the one against which any judgment will be enforced, not the individual.

These Court of Appeals opinions have been overruled in part to the extent *Bosteder* later found the statute in effect at the time did not extend the presuit notice requirement to claims against employees. But the statute has since been amended. In addition, the underlying reasoning as to acts within the scope of employment, however, was not overruled, and we find it persuasive. Washington courts have long

20

*Hanson v. Carmona*, No. 99823-0

interpreted that negligence arising from employee acts within the scope of employment is within the scope of what the State can regulate under article II, section 26. Selective filing and amendments to complaints do not change that in this case, a government employee is being sued for acts within the scope of her employment, and the legislature has the constitutional power to regulate in what manner she can be sued as a government employee for acts within the scope of employment. We decline to limit this constitutional power of the State.

> d. We decline to follow federal tribal sovereign immunity case law when interpreting article II, section 26 of the Washington Constitution

Hanson also relies on *Lewis v. Clarke*, 581 U.S. 155, 137 S. Ct. 1285, 197 L. Ed. 2d 631 (2017), for the distinction between individual capacity lawsuits and official capacity lawsuits and that suits against employees individually are not suits against the State subject to sovereign immunity. Pet'r's Suppl. Br. at 4-7.

In *Lewis*, the Supreme Court considered whether an employee of the Mohegan Tribe of Indians of Connecticut (the Tribe) was immune under the Tribe's sovereign immunity in a case brought against the employee in his personal capacity for a tortious car accident while in the scope of his employment. 581 U.S. at 157-58. In determining whether the employee was entitled to tribal immunity, the Court opined that "in the context of lawsuits against state and federal employees or entities, courts should look to whether the sovereign is the real party in interest to determine whether

21

*Hanson v. Carmona*, No. 99823-0

sovereign immunity bars the suit." *Id*. at 161-62. "In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Id*. at 162.

The Court also acknowledged the importance of individual versus official capacity suits. *Id*. It opined that "[i]n an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself" and that when officials leave office their successors assume the role in the litigation. *Id*. Therefore, "[t]he real party in interest is the government entity, not the named official." *Id*. In contrast, when sued in one's individual capacity, the plaintiff seeks individual liability and the "real party in interest is the individual, not the sovereign." *Id*. at 162-63. In examining these principles, the Court held that the real party in interest was the employee, not the Mohegan Gaming Authority, because

> [t]his is a negligence action arising from a tort committed by Clarke on an interstate highway within the State of Connecticut. The suit is brought against a tribal employee operating a vehicle within the scope of his employment but on state lands, and the judgment will not operate against the Tribe. This is not a suit against Clarke in his official capacity. It is simply a suit against Clarke to recover for his personal actions, which "will not require action by the sovereign or disturb the sovereign's property."

22

*Id*. at 163 (quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 687, 69 S. Ct. 1457, 93 L. Ed. 1628 (1949)). Further, "[i]n ruling that Clarke was immune from this suit solely because he was acting within the scope of his employment, the [Connecticut Supreme Court] extended sovereign immunity for tribal employees beyond what common-law sovereign immunity principles would recognize for either state or federal employees." *Id*. at 163-64.

The Court went on to examine the indemnity agreement between Clarke and the Mohegan Gaming Authority. In doing so, it held that "an indemnification provision cannot, as a matter of law, extend sovereign immunity to individual employees who would otherwise not fall under its protective cloak." *Id*. at 164-65. "The critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab." *Id*. at 165. The Court ultimately held,

> Here, the Connecticut courts exercise no jurisdiction over the Tribe or the Gaming Authority, and their judgments will not bind the Tribe or its instrumentalities in any way. The Tribe's indemnification provision does not somehow convert the suit against Clarke into a suit against the sovereign; when Clarke is sued in his individual capacity, he is held responsible only for his individual wrongdoing. Moreover, indemnification is not a certainty here. Clarke will not be indemnified by the Gaming Authority should it determine that he engaged in "wanton, reckless, or malicious" activity. Mohegan Tribe Code § 4–52. That determination is not necessary to the disposition of the Lewises' suit against Clarke in the Connecticut state courts, which is a separate legal matter.

23

*Hanson v. Carmona*, No. 99823-0

*Id*. at 165-66. The Court also opined that State indemnity agreements are voluntary, and so do not implicate the rationale of allocating scarce resources. *Id*. at 167.

The Court thus concluded that tribal sovereign immunity is not implicated when a suit is brought against employees in their individual capacity and "[a]n indemnification statute *such as the one at issue here* does not alter the analysis." *Id*. at 168 (emphasis added). Relying on *Lewis*, Hanson thus argues that suits against an employee in their individual capacity does not implicate sovereign immunity. Pet'r's Suppl. Br. at 6-7. In addition, because the indemnity statutes that concern the employee and the governmental entity are outside the court process, it does not have a bearing on the case. *Id*. at 10.

However, as the State AGO recognizes, *Lewis* in many ways is materially different from the present case and is not dispositive. First, *Lewis* was decided in reference to tribal sovereign immunity, relied on federal cases applying federal law and the Eleventh Amendment to the United States Constitution and analyzed claims under 42 U.S.C. § 1983. Amicus Curiae Br. of State of Wash. at 25-26. In contrast, the present case concerns article II, section 26 of the Washington Constitution, and this court is the final arbiter of state constitutional law. *Id*. at 26. While the United States Supreme Court has looked to the Eleventh Amendment when determining who may be sued for violations of federal civil rights under 42 U.S.C. § 1983, it has done so only to establish congressional intent in amending that federal statute. *See*

24

*Hanson v. Carmona*, No. 99823-0

*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-67, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (state employees "acting in their official capacities" are outside the class of "persons" subject to liability under 42 U.S.C. § 1983). It is difficult to see how the Eleventh Amendment provides us with any insight into the intent of framers of our state constitution when they passed article II, section 26 or into our state legislature's intent when passing RCW 4.96.020 and .041. The federal and state constitutional provisions and federal and state statutes regarding suits against the government are not the same, and therefore we decline to interpret them as such.

Second, the State AGO focuses on the language in *Lewis* indicating that the inquiry into the party of interest rests on who may be bound by the judgment, and not who will ultimately pay it. Amicus Curiae Br. of State of Wash. at 27-28. The State AGO then distinguishes the Washington indemnification statutes from those at issue in *Lewis*.

Under RCW 4.96.041(1), an employee of a local governmental entity can request the entity cover their defense to a claim that arises "from acts or omissions while performing or in good faith purporting to perform his or her official duties." The request shall be granted if the entity finds this to be the case. RCW 4.96.041(2). Furthermore, if a judgment is entered against the employee, "thereafter the judgment creditor shall seek satisfaction for nonpunitive damages only from the local governmental entity, and judgment for nonpunitive damages shall not become a lien

25

*Hanson v. Carmona*, No. 99823-0

upon any property of such officer, employee, or volunteer." RCW 4.96.041(4); *see also* RCW 4.92.075 (containing similar provisions for employees of the State). Accordingly, the local government entity, not the employee, is bound by any judgment. The Mohegan Gaming Authority indemnity statute at issue in *Lewis* does not similarly bind the Tribe and release the employee from the judgment. Amicus Curiae Br. of State of Wash. at 28 (discussing Mohegan Tribal Code § 4-52). Therefore, this case is materially distinguishable from *Lewis*.

Hanson contends that this court has already rejected this reasoning in *Bosteder* because it did not adopt similar reasoning from *Hardesty*. Answer to AGO Amicus at 15. We disagree. As discussed above, in *Hardesty*, the Court of Appeals extended the claims notice statute to individuals, although the statute at the time did not refer to individuals, because the State was required to defend and satisfy any judgment against the employee. 82 Wn. App. at 260-61. In *Bosteder*, in the lead opinion, Justice Fairhurst would have adopted this reasoning and extended the protections of RCW 4.96.020(4)'s claims notice to individuals within the scope of employment. 155 Wn.2d at 41-42. However, five justices rejected this position because the plain language of the claims notice statute did not explicitly extend to suits against government employees. *Id*. at 58 (Sanders, J., concurring in part, dissenting in part), 59 (Ireland, J. Pro Tem., concurring in part and dissenting in part). Justice Sanders concluded that "the legislature could easily have added a few words to RCW

26

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

4.96.020(4) if it intended the statute to apply to city officials as individuals." *Id*. at 57 (Sanders, J., concurring in part, dissenting in part). The opinions of Justice Sanders and Justice Pro Tempore Ireland make no mention of *Hardesty* or *Woods* or any disagreement with their underlying reasoning regarding indemnity, instead focusing on the plain statutory language. In response, the legislature promptly added language extending this protection to individuals. Further supporting the position that under the current statute, the legislature plainly *did* intend for this protection to apply to individuals.

*Lewis* can also be distinguished on the grounds that *Lewis* concerned absolute immunity, when the case at issue concerns a procedural presuit notice requirement. *See* Amicus Br. of WCIA et al. at 20. The present case is not a matter of a complete bar to recovery or an extension of immunity, it simply requires notice to the governmental entity that will ultimately be bound by any judgment prior to commencing the suit. Accordingly, *Lewis*, does not dictate the outcome in this case and we decline to follow it.

> e. The location and language of the indemnity statute, RCW 4.96.041, confirms that cases against employees acting within the scope of employment are effectively cases against the government as the government is liable for the judgment

Carmona contends that because of the indemnity statute Carmona cannot be held personally liable and that if a judgment were entered against her, the only source of recovery would be from the governmental agency. Resp'ts' Suppl. Br. at 4.

27

*Hanson v. Carmona*, No. 99823-0

Therefore, even when an employee is sued individually, if the employee was acting within the scope of employment, "the plaintiff is, in reality, seeking recovery from the government entity employer." *Id*. We agree.

Although RCW 4.96.041 is currently found in the same statutory scheme as RCW 4.96.020, it was formerly codified in a different chapter. *See* LAWS OF 1979, Ex. Sess., ch. 72, § 1. However, in 1993, the legislature recodified former RCW 36.16.134 (1989), a provision relating only to counties, "as a section in chapter 4.96 RCW." LAWS OF 1993, ch. 449, § 14. In doing so, the legislature laid out that

> [t]his act is designed to provide a single, uniform procedure for bringing a claim for damages against a local governmental entity. The existing procedures, contained in chapter 36.45 RCW, counties, chapter 35.31 RCW, cities and towns, chapter 35A.31 RCW, optional municipal code, and chapter 4.96 RCW, other political subdivisions, municipal corporations, and quasi-municipal corporations, are revised and consolidated into chapter 4.96 RCW.

LAWS OF 1993, ch. 449, § 1. Although the indemnity and notice statutes may not have originally contemplated each other, the 1993 amendments show that the legislature did want them connected to create uniform procedures for suits against all governmental entities. The reasoning in *Hardesty* and *Woods*, as discussed above, coupled with the amended statutory language is persuasive and requires that the claim notice statute apply in the present case as it exposes governmental funds to liability.

*Hanson v. Carmona*, No. 99823-0

While the determination of whether an employee was acting in good faith in the scope of employment may not be readily apparent by the time a plaintiff files suit, that is not a concern in this case. Hanson sued Carmona alleging that she *was* acting in the scope of employment. The government *will* indemnify if an employee was acting within the scope of employment at the time of the negligence. The government will also be the *only* party against which a judgment can be enforced. Hanson was aware as she alleged in her lawsuit that she was suing Carmona for acts within the scope of employment. That she later amended the complaint to avoid the notice statute makes no difference as to whether Carmona was acting within the scope of employment or whether the presuit notice statute applied at the outset. We hold that RCW 4.96.020(4) applies to this case and that Hanson was required to give SEW ALTC notice prior to suing Carmona for acts committed within the scope of her employment.

IV.    RCW 4.96.020(4) does not violate separation of powers

Because we hold that RCW 4.96.020(4) does apply to government employees sued for acts within the scope of employment, even when sued in their individual capacity, we also reach the issue of whether RCW 4.96.020(4) violates separation of powers. We hold that it does not.

The Washington State Constitution does not contain a formal separation of powers clause, but the division of government into branches has been presumed

29

*Hanson v. Carmona*, No. 99823-0

throughout our history. *Carrick v. Locke*, 125 Wn.2d 129, 134-35, 882 P.2d 173 (1994). "The doctrine of separation of powers divides power into three coequal branches of government: executive, legislative, and judicial." *Putman*, 166 Wn.2d at 980. When determining if an action violates separation of powers, the court asks "whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another." *Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975).

> "Some fundamental functions are within the inherent power of the judicial branch, including the power to promulgate rules for its practice. If a statute appears to conflict with a court rule, this court will first attempt to harmonize them and give effect to both, but if they cannot be harmonized, the court rule will prevail in procedural matters and the statute will prevail in substantive matters."

*Waples v. Yi*, 169 Wn.2d 152, 158, 234 P.3d 187 (2010) (quoting *Putman*, 166 Wn.2d at 980).

RCW 4.96.020(4) reads in full,

> No action subject to the claim filing requirements of this section shall be commenced against any local governmental entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct *until sixty calendar days have elapsed after the claim has first been presented to the agent of the governing body thereof.* The applicable period of limitations within which an action must be commenced shall be tolled during the sixty calendar day period. For the purposes of the applicable period of limitations, an action commenced within five court days after the sixty calendar day period has elapsed is deemed to have been presented on the first day after the sixty calendar day period elapsed.

*Hanson v. Carmona*, No. 99823-0

(Emphasis added.)

Hanson alleges that this prefiling notice requirement conflicts with CR 3(a) because it changes the procedure one must follow in order to commence a lawsuit. Pet. for Rev. at 8-9. We agree. However, Hanson also contends that this conflict violates separation of powers. *See* Pet'r's Suppl. Br. at 2. With this assertion, we disagree.

CR 3(a) reads, in pertinent part, "Except as provided in rule 4.1, a civil action is commenced by service of a copy of a summons together with a copy of a complaint, as provided in rule 4 or by filing a complaint."

Previously, Washington courts have examined the constitutionality of prefiling procedures and court rules. In *Putman*, the plaintiff filed a lawsuit against Wenatchee Valley Medical Center and some of its employees for failing to diagnose her ovarian cancer. 166 Wn.2d at 978. The trial court dismissed the claims because Putman did not comply with RCW 7.70.150's requirement that a plaintiff in a medical malpractice case file a certificate of merit at the time of commencing the action. *Id*. Putman appealed, alleging that this requirement violated separation of powers because it conflicted with CR 8 and CR 11 and thereby encroached on the judiciary's inherent power to create court rules. *Id*. at 979-80. This court concluded that RCW 7.70.150's certificate of merit requirement directly conflicted with CR 8

31

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and CR 11. *Id*. at 982-83. Because the statute was procedural, the court rules prevailed over the statute. *Id*. at 985.

We recently reaffirmed this holding as to state defendants in *Martin v. Department of Corrections*, 199 Wn.2d 557, 568, 510 P.3d 321 (2022)*,* specifically distinguishing *McDevitt*, discussed in detail below. We held that because the language in the statute does not specifically apply to the State, the statute did not invoke sovereign immunity principles, and so the same analysis from *Putman* applies to state defendants. *Id*. at 566-67.

About a year after *Putman*, this court decided *Waples*. In that case, the court examined the constitutionality of former RCW 7.70.100(1) (2006), "which requires a plaintiff to provide health care providers with 90 days' notice of the plaintiff's intention to file a medical malpractice suit." *Waples*, 169 Wn.2d at 155. The consolidated cases concerned two medical malpractice plaintiffs who did not comply with the statutory notice requirements. *Id*. at 156-57. The claims were ultimately dismissed. *Id*. On appeal, the plaintiffs argued that the claims notice statute conflicted with CR 3(a) and its procedures for the commencement of a lawsuit. *Id*. at 159. Relying on the analysis in *Putman*, the court concluded that the statute did conflict because "[r]equiring notice adds an additional step for commencing a suit to those required by CR 3(a). And, failure to provide the notice required by RCW 7.70.100(1) results in a lawsuit's dismissal, as it did here, even where the complaint

was properly filed and served pursuant to CR 3(a)." *Id*. at 160. The court held that just like in *Putman*, the rules could not be harmonized, they did involve procedures, and CR 3(a) prevailed over the statute. *Id*. at 161. The statute was therefore unconstitutional. *Id*. Importantly, the case did not involve governmental entities.

Three years later, the court examined the interaction of the *Waples* holding and article II, section 26 of the Washington Constitution in *McDevitt*. 179 Wn.2d at 62. This case concerned the same claim notice statute, RCW 7.70.100(1), and its constitutionality as applied to claims against Harborview Medical Center, a state entity. In a fractured opinion, five justices held that RCW 7.70.100(1)'s notice requirement is constitutional "as applied against the State on the grounds that the legislature may establish conditions precedent, including presuit notice requirements." *Id*. at 63 (J.M. Johnson, J., lead opinion), 81-82 (Fairhurst, J., concurring in part and dissenting in part) ("I agree with the lead opinion that article II, section 26 of the Washington State Constitution empowers the legislature to require a 90 day presuit notification period before filing suit against the State or any of its subdivisions. I wholly join the lead opinion's holding that the presuit notice provision in former RCW 7.70.100(1) (2006) is constitutional."). In doing so the lead opinion recognized that in *Waples* the court found former RCW 7.70.100(1) unconstitutional, but that the court did not have facts before it to consider whether article II, section 26 permitted the presuit notice requirements when bringing suit

33

against the State. *Id*. at 77-81. Because of this, the lead opinion concluded that *Waples* was an as-applied invalidation of the statute. *Id*. The lead opinion also gave this case prospective application only. *Id*. Four justices concurred in result only. *Id*. at 77-81. (Chambers, J. Pro Tem., concurring in result only).

As indicated above, we agree with Hanson that RCW 4.96.020(4)'s requirements conflict with CR 3(a)'s requirements to commence a suit because they add a precondition not found in the court rule. However, in *McDevitt*, five justices held that presuit notice requirements are constitutional as applied to governmental tortfeasors. Because we conclude that RCW 4.96.020(4) applies in the present case, consistent with *McDevitt*, we hold that the legislature is within its constitutional powers under article II, section 26 to set preconditions to suing a governmental entity's employee acting within the scope of employment, even when they are purported to be sued in their individual capacity. Therefore, RCW 4.96.020(4), although it conflicts with CR 3(a), does not violate separation of powers. Accordingly, we affirm the Court of Appeals.

CONCLUSION

We affirm the Court of Appeals on different grounds. We hold that RCW 4.96.020(4) applies even when an employee is sued in their individual capacity but is acting within the scope of employment because the governmental entity is a party in interest when its employees are sued for tortious acts committed within the scope

34

*Hanson v. Carmona*, No. 99823-0

of their employment. In addition, we hold that this statute does not violate separation of powers because, although RCW 4.96.020(4) and CR 3(a) conflict, the legislature has the power to decide conditions precedent to suing the State under article II, section 26 of the Washington Constitution. Accordingly, we remand to the trial court for entry of summary judgment in favor of Carmona.

Whitener, J.

WE CONCUR.

González, C.J.

Gordon McCloud, J.

Madsen, J.

Andrus, J.P.T.

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)


No. 99823-0



STEPHENS, J. (dissenting)—RCW 4.96.020(4) requires presuit notice of tort claims against local governmental entities and local governmental employees "acting in such capacity." Properly understood, the statute effectuates the legislature's limited constitutional authority to "direct by law, in what manner, and in what courts, suits may be brought against the state." WASH. CONST. art. II, § 26. We must therefore interpret the statute consistent with constitutional limits, and such an interpretation is possible. *Utter v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434-35, 341 P.3d 953 (2015) (recognizing need to construe statutes to avoid constitutional infirmity, when possible). Under the plain language of RCW 4.96.020(4), and consistent with article II, section 26 of our constitution, presuit notice must be given only when bringing suit against a local governmental employee acting in their official capacity, i.e., when the suit is actually against the government. I would hold that Hanson was not required to give presuit notice under RCW 4.96.020(4) because Carmona did not act as an agent of the local governmental entity in her official capacity at the time of the alleged tort. I respectfully dissent.

1

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

ANALYSIS

The proper interpretation of RCW 4.96.020(4) presents a matter of statutory construction, which we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). As the majority acknowledges, we must interpret RCW 4.96.020(4) in light of the legislature's waiver of sovereign immunity and its constitutional authority to set conditions precedent to bringing suit against the government. Majority at 6-7. The legislature codified the local governmental waiver of sovereign immunity in 1967 pursuant to its constitutional authority to "direct by law, in what manner, and in what courts, suits may be brought against the state." WASH. CONST. art. II, § 26. The waiver statute in its current form declares:

> All local governmental entities, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their past or present officers, employees, or volunteers while performing or in good faith purporting to perform their official duties, to the same extent as if they were a private person or corporation.

RCW 4.96.010(1).

Consistent with the legislature's authority, RCW 4.96.020(4) sets conditions on the manner of bringing suits against local governmental entities. *Medina v. Pub. Util. Dist. No. 1 of Benton County.*, 147 Wn.2d 303, 312, 53 P.3d 993 (2002) ("The Washington State Constitution specifically reserves the right of the legislature to regulate law suits against governmental entities."). Our interpretation of the scope

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

of presuit notice for suits against local governmental employees must therefore be consistent, if possible, with the legislature's constitutional authority to set conditions precedent to suing the government. Such a reading is possible, based on the plain language of the statute, read in its proper context.

I. The Plain Language of RCW 4.96.020(4) Requires Presuit Notice of Claims against Governmental Employees Only When Acting in Their Official Capacity

To place the language of the presuit notice statute into context, it is important to first examine its history. As originally enacted, the statutory requirement did not mention governmental employees at all. *See* former RCW 4.96.020(4) (2001) ("No action shall be commenced against any local governmental entity for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof."). This court considered whether that former statute nonetheless applied to suits naming local governmental employees in *Bosteder v. City of Renton*, 155 Wn.2d 18, 117 P.3d 316 (2005) (plurality opinion). Five justices concluded the statute's failure to mention presuit notice for claims against governmental employees meant that the statute did not require notice for suits against individual employees. *Id.* at 57 (Sanders, J., concurring in part, dissenting in part) ("By its terms the statute plainly does not apply to individuals."), 59 (Ireland, J. Pro Tem., concurring in part and dissenting in part) ("I agree with the majority except as it holds that the claim filing statute applies to

3

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

individuals. The statute does not state so, and I do not think we should second-guess

the wisdom of the legislature in failing to provide this protection for individuals.").

The lead opinion, however, concluded "that RCW 4.96.020(4) does apply to suits

against individual employees for acts committed within the scope of their

employment." *Id.* at 40.

In response to *Bosteder*, the legislature amended the statute to require presuit

notice for claims against individual employees acting in a governmental capacity.

The statute now states that

> [n]o action subject to the claim filing requirements of this section shall
> be commenced against any local governmental entity, or against any
> local governmental entity's officers, employees, or volunteers, *acting
> in such capacity*, for damages arising out of tortious conduct until sixty
> calendar days have elapsed after the claim has first been presented to
> the agent of the governing body thereof.

RCW 4.96.020(4) (emphasis added). Our task in this case is to precisely identify

and give full effect to the legislature's intent in using the phrase "acting in such

capacity."

The majority concludes that "acting in such capacity" is synonymous with

"acting within the scope of employment." Majority at 11. I disagree, as the concepts

of official capacity and vicarious liability are entirely distinct, and the legislature

could have easily used the familiar phrase "scope of employment" had it intended to

incorporate that doctrine. Instead, it used the term "capacity." *See* FINAL B. REP.

4

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

ON SUBSTITUTE H.B. 3120, at 2, 59th Leg., Reg. Sess. (Wash. 2006) (discussing *Bosteder* and concluding that "[t]he claim filing statutes that apply to tort claims against the state or local governments are amended to specifically provide that these statutes apply to claims against officers, employees, or volunteers of the state or local government when acting in that capacity").[1]

A suit against a local governmental employee "acting in such capacity" is well understood to mean a suit involving the governmental employee acting in their *official capacity*, i.e., essentially as a personification of the government. A classic example is a suit against the attorney general or secretary of state challenging a ballot title. *See, e.g.*, *Kreidler v. Eikenberry*, 111 Wn.2d 828, 766 P.2d 438 (1989)

---

[1] The majority argues that this court has conflated the terms "scope of employment" and "official capacity." Majority at 14 (citing *Kelso v. City of Tacoma*, 63 Wn.2d 913, 914, 390 P.2d 2 (1964)). I recognize that the terms have not always been clearly defined. Still, our cases identify significant differences between the concepts of sovereign immunity, from which the notice statute derives, and common law vicarious liability. Respondeat superior is a principle of generally applicable agency law, and "scope of employment" simply describes one instance in which an employee's tortious conduct might result in vicarious liability. When a plaintiff sues both the principal and agent, the result may be joint and several liability. *See, e.g.*, *Houser v. City of Redmond*, 91 Wn.2d 36, 586 P.2d 482 (1978) (addressing municipal liability under the doctrine of respondeat superior). In contrast, under the notice statute, sovereign immunity principles—not vicarious liability principles—are at play because article II, section 26 empowers the legislature to set preconditions for suits against governmental entities. RCW 4.96.020(4) does not affect common law principles of vicarious liability, just as it does not affect indemnity principles. Indeed, the statutory indemnity the majority relies on is *not* a feature of the presuit notice statute. *See* majority at 28 (citing RCW 4.96.041(1)). The legislature had to enact a separate statutory mechanism for government employers to defend and indemnify their employees for acts within the scope of their employment. RCW 4.96.041. As discussed below, that a separate statutory scheme is necessary confirms that acting within the scope of employment is not the same as acting in official capacity (i.e., *as the government*).

5

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

(citizens' initiative group brought suit against attorney general and secretary of state challenging the attorney general's drafted ballot title). We have also relied on this distinguishing feature of "official capacity" as meaning "acting as the government" in other contexts—for example, where a statute specified venue for suits against government officials for acts committed in their official capacity. *Eubanks v. Brown*, 180 Wn.2d 590, 602, 327 P.3d 635 (2014) (finding RCW 4.12.020(2) did not apply because "[e]mployment alone is not sufficient to make an act in virtue of a public office"). In *Eubanks*, we expressly distinguished "scope of employment" from "acting in the capacity of the government," stating:

> An officer acts in the course and scope of employment if he or she acts to serve the purposes of his or her employer—the public. An officer acts in virtue of his public office when acting with authority granted to him because of that position, regardless of underlying motivations.

*Id.* (emphasis and citation omitted).

Rather than looking to history and context, the majority relies on dictionary definitions of the term "capacity." In the majority's view, because "capacity" refers generically to "'[t]he role in which one performs an act,'" majority at 13 (alteration in original) (quoting BLACK'S LAW DICTIONARY 257 (11th ed. 2019)), it follows that the presuit notice statute applies to "all acts taken by government employees acting within the scope of employment even when the governmental agency is not sued." *Id.* But, equating official capacity with scope of employment sweeps up employee

6

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

conduct that no one—including the governmental entity—would argue constitutes official duties, even though it gives rise to vicarious liability for the employer. For example, we have recognized several times that purposeful misconduct of an employee can be imputed to the employer under vicarious liability. *See, e.g.*, *Robel v. Roundup Corp.*, 148 Wn.2d 35, 54, 59 P.3d 611 (2002) (employer held vicariously liable for damages caused by employees who harassed a coworker while "perform[ing] the duties they were hired to perform"); *Dickinson v. Edwards*, 105 Wn.2d 457, 470, 716 P.2d 814 (1986) ("This court has held that an employer may be liable for the negligent acts of his employee, although such act may be contrary to instructions." (citing *Greene v. St. Paul-Mercury Indem. Co.*, 51 Wn.2d 569, 573, 320 P.2d 311 (1958))); *Smith v. Leber*, 34 Wn.2d 611, 209 P.2d 297 (1949) (determining tortfeasor acted within scope of employment when he drove a company-owned truck against express instructions of supervisor).

While the majority's overbroad interpretation would regard almost all employee actions as official acts, the plain language of the statute reflects a more limited reach. As discussed next, this narrower scope is confirmed by the constitutional provision that supports the statute, WASH. CONST. art. II, § 26, which cabins the legislature's power to place conditions on a plaintiff's right to seek redress and access our courts.

7

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

II.    RCW 4.96.020(4) Cannot Exceed the Legislature's Constitutional Authority To Determine the Way Suits May Be Brought against Governmental Entities, Including When a Lawsuit Names an Employee in Their Official Capacity

The presuit notice statute must be read within the context of the legislature's constitutional authority to enact that requirement.  Following the waiver of sovereign immunity, the legislature may condition only the way "suits may be brought against the *state*."  WASH. CONST. art. II, § 26 (emphasis added).  While this authority extends to local governmental entities, the State admits that "[l]egislation enacted under article II, section 26 is valid so long as its reach is commensurate with the scope of sovereign immunity."  Amicus Curiae Br. of State of Wash. at 6.[2]  This means any precondition to bringing suit against a governmental employee must be limited to suits that are functionally suits against the governmental entity, such as those that were previously barred by sovereign immunity.  Not all suits against individual employees acting within the scope of their employment fall within this category.

The legislature defined the narrow category of applicable suits when it codified the waiver of sovereign immunity for suits against local governmental

---

[2] As discussed below, for example, a local governmental entity never enjoyed immunity for actions taken by employees in a proprietary capacity. *See, e.g.*, *Hewitt v. City of Seattle*, 62 Wash. 377, 113 P. 1084 (1911) (because maintaining streets is a proprietary function, city was liable for a pedestrian's injuries after the street superintendent, who was driving a car in the course of his employment, hit the pedestrian).

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

entities, pursuant to its article II, section 26 authority. It did so by waiving immunity for governmental employees "while performing or in good faith purporting to perform their *official duties*." RCW 4.96.010(1) (emphasis added). By using that language, the legislature intended to treat suits against local governmental employees as suits against the local governmental entity when based on the employees' *official capacity*. The plain language of the presuit notice statute mirrors this language because it requires notice of claims against governmental employees "acting in such capacity." RCW 4.96.020(4). Read in the proper context, it becomes evident that the legislature was operating within the boundaries of its constitutional authority under article II, section 26 by requiring notice for suits against governmental employees only when they are named in their official capacity for the governmental entity.

The majority loses this constitutional thread by relying on respondeat superior principles to conclude that acts within the scope of employment equate to acts done in a governmental employee's official capacity. Majority at 17 (determining that "acts within the scope of employment are within one's capacity as a governmental employee"). As discussed, the legislature used the term "capacity" rather than "scope of employment" when it amended RCW 4.96.020 in response to this court's decision in *Bosteder*. LAWS OF 2006, ch. 82, § 1. The majority argues we later described the statutory amendment as embracing "scope of employment" principles,

9

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

but the sentence in the per curiam decision the majority relies on is not so specific.

*See* majority at 20 ("'In response to our decision in *Bosteder*, the legislature amended RCW 4.96.020 to provide *that claims against individual government employees are subject to the claims filing statute*.'" (quoting *Wright v. Terrell*, 162 Wn.2d 192, 195 n.1, 170 P.3d 570 (2007))).  Instead, this language is wholly consistent with the more limited principle describing when an individual governmental employee is sued in their "official capacity."

By failing to read the presuit notice requirement in light of the legislature's waiver of sovereign immunity, the majority broadens the presuit notice requirement beyond the constitutional limits of the legislature's power to set conditions precedent to the government being sued.  Even before the State's waiver of sovereign immunity, local governmental entities were often subject to liability.  *See, e.g.*, *Sutton v. Snohomish*, 11 Wash. 24, 39 P. 273 (1895) (city held liable for damages sustained by plaintiff when he fell into a city-created hole in the street).  Any immunity depended on whether a local governmental actor was performing a governmental function or a proprietary function: "municipalities are not liable for the negligence of their officers and employees when engaged in the performance of governmental or public duties, but are liable for their negligence when performing duties consequent upon the exercise, by the municipality, of its corporate or private powers."  *Hagerman v. City of Seattle*, 189 Wash. 694, 696, 66 P.2d 1152 (1937).

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

Immunity was granted "to municipal corporations when acting in a governmental capacity." *Id.* at 697. One of the several reasons the *Hagerman* court listed for this limited grant of immunity was the fact that "[m]embers of municipal departments in the exercise of public governmental duties are agents of the state and not of the city, and hence the doctrine of *respondeat superior* has no application." *Id.* At bottom, the core of the analysis was whether the state employees were properly exercising the power of the government through their official duties.

The understanding that local governmental employee immunity relates only to their official capacity is demonstrated by the foundational case in which this court determined that the State's waiver of sovereign immunity extended to local governments. *Kelso v. City of Tacoma*, 63 Wn.2d 913, 914, 390 P.2d 2 (1964). In *Kelso*, the court considered whether the city of Tacoma could be held liable for a police officer getting into a car crash and injuring the plaintiff. The court framed the issue as "whether a municipal corporation, a subdivision of the state, retains governmental immunity for the tortious acts of its agents while performing a governmental function in view of RCW 4.92.090 wherein the state consents to be sued for its tortious conduct." *Id.* In concluding that local governments were not immune from liability in tort, the court noted that the actions of the police officer were effectively actions of the city of Tacoma: "The city of Tacoma was liable for its tortious conduct, if any, at the time of the automobile collision in which the

11

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

plaintiff was injured." *Id.* at 919. Contrary to the majority's reading of *Kelso*, it did not hold that common law principles of respondeat superior define the scope of governmental liability following the waiver of sovereign immunity. *See* majority at 14 (concluding that *Kelso* held that "acting in the scope of employment, is the equivalent of the tortious conduct of the city" (emphasis omitted)). The governing principles may overlap in certain cases, but they are not coextensive.

This point is clearly explained in the leading United States Supreme Court case, *Lewis v. Clarke*, which the majority simply refuses to follow. 581 U.S. 155, 137 S. Ct. 1285, 197 L. Ed. 2d 631 (2017). In that case, the Court considered whether a tribal employee who hit someone while driving a car and acting within the scope of their employment was immune from suit. *Id.* at 158-61. The Court observed that the basis for an employee partaking in the sovereign immunity of a governmental entity is rooted in the employee acting in their official capacity. The Court stated that "lawsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent,' and they may also be barred by sovereign immunity." *Id.* at 162 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). The Court further explained that "[i]n an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Id.* Conversely, if the tribal employee was not

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

acting in their official capacity, then the suit was against the employee individual in their "'personal capacity'" even though they were acting within the scope of employment. *Id.* at 162-63 (quoting *Hafer v. Melo*, 502 U.S. 21, 27, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)).[3]

The reasoning in *Lewis* is persuasive and consistent with both this court's precedent regarding sovereign immunity of governmental employees and the proper reading of RCW 4.96.020(4) as limited to "official capacity" acts. I would adhere to the plain language of the statute understood in its historical and constitutional context, and conclude that RCW 4.96.020(4) does not require presuit notice for claims against a local governmental employee in their individual capacity.

 III. The Statutory Scheme Permitting a Governmental Entity To Defend an Employee Does Not Convert an Individual Suit into a Suit against the Government

In support of its conclusion that RCW 4.96.020(4) applies to suits against governmental employees in their individual capacity, the majority makes much of a separately enacted indemnity scheme that permits a local governmental employer to defend and indemnify their governmental employee under certain circumstances. Majority at 28-29; *see* RCW 4.96.041. The majority assumes the statutory conditions for indemnity are met before any suit is filed, and it accepts Carmona's

---

[3] As discussed below, the Court also explained why statutory indemnity arrangements have no bearing on whether a suit is against a governmental entity. *Lewis*, 581 U.S. at 165-67.

13

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

argument that the nature of the suit (i.e., whether it is against an individual or the government) depends on whether the governmental employer may ultimately pay any judgment. Majority at 28 (concluding presuit notice is required because the indemnity statute "exposes governmental funds to liability"). This argument conflates two distinct concepts and misapprehends how questions of "scope of employment" arise in ordinary tort litigation.

The indemnity statute simply permits a local governmental employee who is sued to request that the local governmental employer provide and fund the employee's defense. RCW 4.96.041(1). If, after the employee's request, the relevant local governmental authority "finds that the acts or omissions of the officer, employee, or volunteer were, or in good faith purported to be, within the scope of his or her official duties," then the local governmental entity must pay the expenses for defending the suit. RCW 4.96.041(2). When the local governmental entity has provided the employee's defense and "the court hearing the action has found that the officer, employee, or volunteer was acting within the scope of his or her official duties," then any adverse judgment against the employee can be sought only "from the local governmental entity, and judgment for nonpunitive damages shall not become a lien upon any property of such officer, employee, or volunteer." RCW 4.96.041(4). The majority mistakenly construes the government's decision to

14

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

defend and ultimately pay any adverse judgment against a governmental employee

as effectively converting the suit into a claim against the local governmental entity.

To the contrary, the fact that this separate statutory framework is necessary

for an employee to receive a defense and indemnification confirms that suits against

governmental employees individually are not, ab initio, suits against the

governmental entity. The legislature passed RCW 4.96.041 to protect certain

governmental employees against exposure to tort liability in situations where joint

and several liability would apply. *See* FINAL B. REP. on SUBSTITUTE S.B. 2411, 46th

Leg., 1st Ex. Sess. (Wash. 1979) (bill resolves the issue that local governmental

entities "are not currently authorized to defend suits and pay judgements against their

employees and officers who have been sued for acts or omissions performed in the

course of official duties"). Although RCW 4.96.041 currently appears in the same

statutory chapter as the provisions related to the local governmental waiver of

sovereign immunity, it was not enacted as part of those provisions. *See* LAWS OF

1979, Ex. Sess. ch. 72, § 1 (originally codified at RCW 36.16.134). In fact, the

indemnity statute contains its own notice provision, which requires the governmental

employee to alert their employer of the pending suit. RCW 4.96.041(1) (when action

brought against governmental employee, that employee "may request the local

governmental entity to authorize the defense"), .041(2) (local governmental entity

begins indemnification process only after the employee provides notice). The way

15

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

this provision operates demonstrates that the legislature was not contemplating a connection between ultimate indemnification and the presuit notice requirement or any other conditions precedent to bringing suit against local governmental entities.

Indeed, it will often be difficult for a plaintiff to determine before filing suit whether an individual tortfeasor is a governmental employee who was acting within the scope of their employment at the time of the incident giving rise to the claim. As RCW 4.96.041 makes clear, that is a factual question, and it does not follow from any allegation in a plaintiff's complaint. RCW 4.96.041(4) (local governmental entity bound to judgment only after "the court . . . [finds] that the officer, employee, or volunteer was acting within the scope of his or her official duties"). The majority seems to accept as "fact" the allegation in Hanson's original complaint that Carmona was acting within the scope of her employment; but that complaint is not even before us and no determination has been made as to whether Carmona was acting within the scope of her employment at the time of the collision. *See* majority at 15 (asserting that it is "undisputed" that Carmona is acting within the scope of her employment).[4]

---

[4] It seems clear that the unique facts of this case, in which Hanson amended her complaint after Southeast Washington Office of Aging and Long Term Care raised the defense based on RCW 4.96.020, bother the majority. *See, e.g.*, majority at 21 ("Selective filing[s] and amendments to complaints do not change that in this case, a government employee is being sued for acts within the scope of her employment."). But the majority's interpretation of the presuit notice requirement will apply to any case in which it *might* ultimately be

16

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

The United States Supreme Court has recognized the limited impact of indemnity provisions on the sovereign immunity analysis in *Lewis*, discussed above. In rejecting the argument that an indemnification provision for a suit against tribal employees provided the employee with immunity from suit, the Court stated that "[t]he critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab." *Lewis*, 581 U.S. at 165. The majority distinguishes *Lewis* from this case, reasoning that the local governmental entity is statutorily bound by the judgment once it decides to defend the employee. Majority at 27 (RCW 4.96.020(4) "requires notice to the governmental entity that will ultimately be bound by any judgment prior to commencing the suit"). But the Court has explained that whether a suit against a governmental employee is effectively against the government depends on whether the government is *required* to pay any adverse judgment: "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a

_____

determined that a governmental employee acted within the scope of their employment. The practical problem of this interpretation is that this key fact may not be known before suit is filed and discovery is available, and in any case, the fact may be hotly disputed. If the majority's concern is that a governmental entity should have notice of any suits in which it might be financially responsible under vicarious liability principles, that notice concern is addressed in RCW 4.96.041. Sensibly, the statute requires notice to come directly from the employee, who is in the best position to know whether they were acting within the scope of the employment (or at least will make this claim). Moreover, a plaintiff can clearly identify when a governmental employee is acting in his or her "official capacity," which would ensure RCW 4.96.020 provided more effective notice.

17

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

plaintiff seeking to recover on a damages judgment in an official-capacity suit *must look to the government entity itself.*" *Graham*, 473 U.S. at 166 (emphasis added).

The majority misconstrues how RCW 4.96.041 results in the local governmental entity agreeing to pay an adverse judgment against its employee. Washington's indemnification scheme does not impose any requirement that the local governmental entity pay. Instead, the entity decides in the first instance whether it will defend an employee, and it is this decision that triggers its ultimate duty to pay any adverse judgment, which is also a local decision. RCW 4.96.04. This is far afield from the situation in which the State's treasury must answer for judgments against the local governmental entity. *See, e.g.*, *Lewis*, 581 U.S. at 165 n. 4 (contrasting another case in which the "judgment '*must* be paid out of a State's treasury.'" (emphasis added) (quoting *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 115 S. Ct. 394, 130 L. Ed. 2d 245 (1994))).

The facts before us are limited at this early stage of proceedings. Hanson's amended complaint sued Carmona only in her individual capacity. It contained no allegation that Carmona was acting in her official capacity as a governmental employee or that she was acting within her scope of employment. While Carmona responded in her motion for summary judgment (in direct response to Hanson's original complaint) that she was within the scope of her employment at the time of the car accident, neither Carmona nor the State argue that she was acting in her

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

official governmental capacity. Clerks Papers at 12. The parties never revive the scope of employment issue in the following pleadings. *See id.* at 57-62 (response to motion for summary judgment), 79-87 (reply to response). We do not know whether a court would ultimately determine that Carmona acted within the scope of employment or instead was on a "frolic and detour" when the accident occurred. *Van Court v. Lodge Cab Co.*, 198 Wash. 530, 540-41, 89 P.2d 206 (1939) (taxicab company was not liable for damages caused by a taxi driver while driving to get liquor because the driver was on a "'frolic'" and "detour"). Based on a plain reading of the RCW 4.96.020(4) within the context of article II, section 26 of Washington's constitution, I would hold that the presuit notice requirement does not apply. *See Utter*, 182 Wn.2d at 434-35 (this court interprets statutes consistent with the constitution when possible). Under this reading, it is not necessary to reach Hanson's constitutional claim that the statute, if it applied, would violate the separation of powers.

CONCLUSION

RCW 4.96.020(4) imposes a presuit notice requirement on claims against local governments, including those that name individual governmental employees acting in their official capacity. The majority's view that the statute applies anytime a governmental employee may be found to have acted within the scope of their employment expands the statute's reach beyond the legislature's constitutional

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Hanson v. Carmona*, No. 99823-0
(Stephens, J., dissenting)

authority under article II, section 26.  Because Hanson sued Carmona solely in her

personal capacity, the trial court correctly concluded that presuit notice was not

required.  I respectfully dissent.

Stephens, J.

Johnson, J.

Owens, J.

Yu, J.

20